1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                    NORTHERN DISTRICT OF CALIFORNIA

10
DIANE MAROLDA, on behalf of herself and           No. C 08-05701 MHP
11 all others similarly situated,

12              Plaintiff,                          **MEMORANDUM & ORDER**

13       v.                                         **Re: Motion to Dismiss Plaintiff's First**
                                                    **Amended Complaint**
14 SYMANTEC CORP.,

15              Defendant.
   _____/
16

17       Plaintiff Diane Marolda ("Marolda") brings this action on behalf of herself and all others

18 similarly situated against defendant Symantec Corp. ("Symantec"), seeking damages for violations

19 of the Consumer Legal Remedies Act, the False Advertising Law, and the Unfair Competition Law,

20 as well as for breach of contract, breach of covenant of good faith and fair dealing, money had and

21 received, and unjust enrichment.  She also seeks declaratory judgment against defendant.  Now

22 before the court is defendant's motion to dismiss plaintiff's first amended complaint for failure to

23 state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6).  Having considered the parties'

24 arguments and submissions, and for the reasons set forth below, the court enters the following

25 memorandum and order.

26
27
28

United States District Court

For the Northern District of California

BACKGROUND[1]

Marolda is a resident of New Jersey.  Symantec, a corporation headquartered in California, specializes in anti-virus software for personal computers.  Its software products may be purchased and downloaded directly from Symantec's website. The court notes that while plaintiff's complaint does not specify the citizenship of the parties, defendant failed to raise any objections.

This action concerns four software products developed and sold by Symantec that Marolda purchased at various times between 2005 and 2008.  All four products include anti-virus protection, which, in order to be effective, depend on annual subscriptions to a remote component of the product, hosted on Symantec's servers.  At purchase, each product comes with a one-year subscription to the remote component, which can be renewed.  After a year, when the subscription expires, the software will not simply stop working but will continue to function, albeit without the ability to recognize new viruses and other emerging threats.  According to plaintiff, some of these products included "On-Going Protection," a feature that automatically renews the subscription to the remote service at the end of the year.  On-Going Protection requires the user to affirmatively cancel the automatic renewal by visiting the Symantec website; otherwise, the subscription is renewed for another year and the user's account is charged automatically.

On July 17, 2005, Marolda purchased System Work ("SW"), a product providing anti-virus protection, for $39.99.  SW came with On-Going Protection.  Towards the end of her one-year subscription, but before the subscription was to expire, Marolda was given an opportunity to renew SW or to "upgrade" to a completely different product, Norton Internet Security Upgrade 2006 ("NIS 2006").  She chose to purchase NIS 2006, on June 17, 2006, for $49.99, with the belief that this software product did not include On-Going Protection.  Her original subscription to SW was not renewed for 2007.

On May 21, 2007, Marolda was again offered the opportunity to renew NIS 2006 or to upgrade to another newer product, Norton 360, for $59.99.  She chose to upgrade to Norton 360, with the belief that Norton 360 did include On-Going Protection.

A year later, in April 2008, Marolda received another offer to renew or upgrade, this time to Norton 360 Premiere. She again chose the upgrade offer, but later in 2008 she discovered that Symantec had automatically renewed her subscription for NIS 2006 in both 2007 and 2008, as well as her Norton 360 subscription for 2008. Upon contacting Symantec, Marolda was issued a refund for the cost of the Norton 360 subscription during 2008, but not for her NIS 2006 subscriptions in 2007 and 2008.

The four software products allegedly all feature the same functionality—anti-virus protection. Older software thus becomes redundant when an "upgrade" is purchased. Marolda does not state in which form and by what means she received the yearly offer to "upgrade." All her purchases and downloads took place on Symantec's website. Marolda alleges that Symantec has a means of knowing whether a consumer is purchasing an upgrade for use on the same computer as the previous version of her anti-virus program or for use on a second machine.

On December 12, 2008, Marolda brought this suit against Symantec, asserting the following eight causes of action: (1) violation of the Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code sections 1750–1784; (2) violation of the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code sections17200–17210; (3) violation of the False Advertising Law ("FAL"), Cal. Bus. & Prof. Code sections17500–17509; (4) breach of express and/or implied contract; (5) breach of covenant of good faith and fair dealing; (6) money had and received; (7) unjust enrichment; and (8) declaratory relief.

On April 6, 2009, at an initial Case Management Conference, the court instructed plaintiff to file an amended complaint paying particular attention to the proposed class definition and attaching documents that would clearly support her allegations. On April 20, 2009, plaintiff filed a first amended complaint, which defendant now moves to dismiss.

LEGAL STANDARD

I.    Motion to Dismiss for Failure to State a Claim

A motion to dismiss filed under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). Since Rule 12(b)(6) is

1   concerned with a claim's sufficiency rather than its substantive merits, when faced with a motion to

2   dismiss, courts typically courts "look only at the face of the complaint." Van Buskirk v. Cable News

3   Network, Inc., 284 F.3d 977, 980 (9th Cir. 2002).  Additionally, the doctrine of incorporation by

4   reference allows a district court to consider documents "whose contents are alleged in a complaint

5   and whose authenticity no party questions, but which are not physically attached to the plaintiff's

6   pleading." In Re Silicon Graphics Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999) (quoting Branch v.

7   Tunnell, 14 F.3d 449, 454 (9th Cir. 1994)).

8          A court will grant a motion to dismiss if the plaintiff fails to plead "enough facts to state a

9   claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007).

10   Plaintiff's complaint may be dismissed either for failing to articulate a cognizable legal theory or for

11   not alleging sufficient facts under a cognizable legal theory. Balistreri v. Pacifica Police Dep't., 901

12   F.2d 696, 699 (9th Cir. 1990).

13          The Supreme Court recently clarified its two-pronged approach, illustrated by Twombly, to

14   considering a motion to dismiss.  In Ashcroft v. Iqbal, 129 S.Ct. 1937, 1950 (2009), the Court held a

15   court can "begin by identifying pleadings that, because they are no more than conclusions, are not

16   entitled to the assumption of truth. While legal conclusions can provide the framework of a

17   complaint, they must be supported by factual allegations. When there are well-pleaded factual

18   allegations, a court should assume their veracity and then determine whether they plausibly give rise

19   to an entitlement to relief." Id.

20   II.    Pleading Standard for Fraud Claims

21          When alleging fraud, a party must plead with particularity the circumstances constituting

22   fraud, while conditions of the mind, such as knowledge and intent, may be alleged generally.  Fed.

23   R. Civ. P. 9(b).  Rule 9(b) applies to cases brought in federal courts, irrespective of whether the

24   substantive law is state or federal.  Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1102 (9th Cir.

25   2003), citing Hanna v. Plumer, 380 U.S. 460 (1965).  Therefore, in an action based on state law,

26   while a district court will rely on state law to ascertain the elements of fraud that a party must plead,

27

28

4

United States District Court

For the Northern District of California

1  it will also follow Rule 9(b) in requiring that the circumstances of the fraud be pleaded with

2  particularity.  Kearns v. Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009).

3       Even when fraud is not a necessary element of the claim, a plaintiff may still allege that the

4  defendant's conduct was fraudulent.  Such allegations can take two forms: (1) the plaintiff may

5  allege a unified course of fraudulent conduct, in which case the claim is deemed to be "grounded in

6  fraud," or (2) the plaintiff may allege some fraudulent and some non-fraudulent conduct.  Vess, 317

7  F.3d at 1103-04.  In the first case, when the claim is "grounded in fraud," the pleading of that claim

8  as a whole is subject to Rule 9(b)'s particularity requirement.  Id. at 1104.  In the second instance,

9  only the allegations of fraudulent conduct must satisfy the heightened pleading requirement, while

10  the remaining allegations are subject to the normal pleading standard of Rule 8(a).  Id. at 1104-05.

11       "Because a dismissal of a . . . claim grounded in fraud for failure to comply with Rule 9(b)

12  has the same consequence as a dismissal under Rule 12(b)(6), dismissals under the two rules are

13  treated in the same manner."  Id. at 1107.

14

15  DISCUSSION

16  I.    Applicable Pleading Standard

17       Before the court can address the substance of plaintiff's complaint, it must first determine

18  which of plaintiff's allegations describe fraudulent conduct, requiring evaluation under the

19  heightened pleading standard, and which describe non-fraudulent conduct, to be evaluated under

20  Rule 8(a)'s pleading requirements.

21       Fraud can be alleged specifically or by pleading facts that, taken together, necessarily

22  constitute elements of a fraud claim according to state law.  Id. at 1105-06.  California law identifies

23  the elements of a fraud claim as: (1) misrepresentation (false representation, concealment, or

24  nondisclosure); (2) knowledge of falsity; (3) intent to induce reliance; (4) justifiable reliance; and (5)

25  resulting damage.[2]  Kearns, 567 F.3d at 1126.

26       In exceptional situations, when plaintiffs "cannot be expected to have personal knowledge of

27  the facts constituting the wrongdoing," the heightened pleading standard normally required for fraud

28

United States District Court
For the Northern District of California

may be relaxed.  Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1440 (9th Cir. 1987).  In such cases, the plaintiff may base her allegations on knowledge and belief, "if the allegations are accompanied by a statement of the facts upon which the belief is founded."  Id.

In cases where fraud is not an essential part of the plaintiff's claim, only averments of fraudulent conduct must comply with Rule 9(b)'s heightened pleading standard.  "If the particular averments of fraudulent conduct are insufficiently pled under Rule 9(b), then the court should disregard these averments or 'strip' them from the claim.  The court must then examine the remaining allegations to determine if they state a claim."  Sherman v. Network Commerce, Inc., 94 Fed. Appx. 574, 575 (9th Cir. 2004).

Plaintiff's FAC alleges several false representations and omissions, one in 2006 and three in 2007.  Because plaintiff's eight causes of action largely rest on the same common set of facts, an allegation of fraudulent conduct with respect to any one event will ripple through all claims of which the event is an essential component.  As a result, such claims will require a heightened pleading standard.  This does not apply, of course, to pleadings in the alternative or to claims that do not actually rest on the allegedly fraudulent event.  For each alleged event, the court considers the pleaded facts, the pleading standard triggered by these alleged facts, and whether plaintiff's allegations are sufficient to state a claim under the applicable pleading standard.

A.     The 2006 Transaction

To begin in chronological order with plaintiff's 2006 purchase, she alleges that neither Symantec's website, nor the automatic invoice plaintiff later received, informed her that the copy of NIS 2006 she had purchased in 2006 was subject to automatic renewal.  FAC ¶¶ 9, 11.  Plaintiff fails, however, to identify any damages resulting from this purported misrepresentation.  For one, she does not allege she would not have purchased NIS 2006 in 2006 had she known of the product's auto-renewal features, nor does she allege she would not have renewed NIS 2006 in 2007, absent any offer to upgrade.  In fact, plaintiff wanted the anti-virus functionality in 2007 just as much as she had wanted it in 2006.  Had she known NIS 2006 would automatically renew unless she took affirmative steps, she would have still purchased Norton 360 and simply canceled NIS 2006.

United States District Court

For the Northern District of California

1    Plaintiff characterizes the 2007 purchase as one where she was facing an "either/or" choice between

2    NIS 2006 and Norton 360.  She clearly expressed a preference for Norton 360 over NIS 2006,

3    relying not on NIS 2006's presumed lack of renewal features but on Symantec's alleged assurance

4    that if she selected one product she would not be billed for the other.  In sum, plaintiff does not

5    allege that auto-renewal was an unwanted feature in NIS 2006, nor does she explain how knowledge

6    of this feature was material to her choice of products in 2007, given her description of that

7    transaction.  As a result, she fails to show she suffered any harm as a result of the misrepresentation

8    or that she relied on it in her buying decisions.  Further, plaintiff fails to allege that Symantec knew

9    of or intended to misrepresent the features included in NIS 2006.

10       Since plaintiff alleges only one of the five elements of fraud, her description of the 2006

11   events must be examined under the usual Rule 8(a) pleading standard.  As this court has previously

12   indicated, when Rule 9(b) is not applicable to heighten the pleading standard, plaintiffs are still

13   required to provide "some specificity" in their pleadings to put defendants on notice of the charges

14   leveled against them.  Nordberg v. Trilegiant Corp., 445 F. Supp. 2d 1082, 1097 (N.D. Cal. 2006)

15   (Patel, J.).

16       Plaintiff identifies the misrepresentation as follows: On June 17, 2006, the Symantec website

17   displayed a table comparing the features of NIS 2006 with those of other products, FAC ¶ 8; the On-

18   Going Protection feature did not have a check-mark in the NIS 2006 column, FAC ¶ 9; and

19   Symantic knew the website information was false because in 2007 Symantec renewed Marolda's

20   NIS 2006 subscription knowing that she had made no steps to do so, FAC ¶ 18.  Plaintiff does not

21   clarify whether NIS 2006 included On-Going Protection when she purchased it, but Symantec failed

22   to inform her of it, or instead whether NIS 2006 did not include On-Going Protection at the time of

23   purchase, but Symantec renewed it anyway contrary to the 2006 or the 2007 purchase terms.  Since

24   plaintiff includes a breach of contract claim in the FAC, the court will assume that plaintiff's

25   intention was to plead in the alternative for the purposes of that claim.

26       These facts identify the alleged 2006 misrepresentation sufficiently.  Under the Rule 8(a)

27   pleading standard, plaintiff may base her claims on information and belief, and need not append any

28

7

exhibits.[3]  Again, the usefulness of this pleading is limited, absent a showing that Marolda incurred damages as a result.

        B.      The 2007 Transaction

      In 2007, Symantec allegedly presented plaintiff with an offer to either upgrade to Norton 360 or renew her NIS 2006 subscription, FAC ¶¶ 14, 23, but also charged her for NIS 2006 after she had chosen to upgrade to Norton 360, FAC ¶¶ 18, 45.  On the same occasion, Symantec failed to inform plaintiff that her upgrade to Norton 360 in 2007 would not cancel her existing NIS 2006 subscription, FAC ¶ 14, and that Symantec would in fact renew that subscription, FAC ¶¶ 24, 45. Also related to the 2007 transaction, Symantec's online renewal center indicated to plaintiff that On-Going Protection was a feature of the Norton 360 "upgrade" option only, when in fact Symantec billed her as if NIS 2006 also benefitted from On-Going Protection.  FAC ¶¶ 44, 46.

      Plaintiff also alleges that she suffered damages as a result of defendant's misrepresentations since she would not have purchased the Norton 360 upgrade, which cost $59.99, had she been aware she would also be billed for the renewal of NIS 2006, which cost $49.99.  FAC ¶¶ 26-27.  Damages as a result of the misrepresentations necessarily include an allegation of reliance.  The NIS 2006 renewal was "unwanted and unused" and "superfluous" since plaintiff had upgraded to Norton 360, which provided "nearly identical" functionality, and had not authorized the use of the Symantec software on more than one computer, rendering the renewal "moot."  FAC ¶¶ 27, 21, 25, 16, 13.

      Plaintiff further asserts that defendant had knowledge of some of the features of these transactions.  Plaintiff alleges that Symantec was aware how many computers were authorized to run its software,  FAC ¶ 19, and that plaintiff had not authorized the NIS 2006 renewal for any computer.  FAC ¶¶ 21, 25.  Plaintiff further alleges that Symantec knew that NIS 2006 and Norton 360 were "mutually exclusive."  FAC ¶ 30.  As a result, Symantec allegedly knew that plaintiff had not renewed NIS 2006, FAC ¶ 18, and that NIS 2006 was "unwanted and unused" after the upgrade, FAC ¶ 28.

      Additionally, the FAC also describes Symantec's intent to engage in "fraudulent and unfair business practices," FAC ¶ 6, to "swindle money" from plaintiff, FAC ¶ 8, by "concealing" details

1   of its subscriptions and designing the online renewal center in a manner that proved "deceptive" to

2   the plaintiff, FAC ¶¶ 44-46.  According to plaintiff, Symantec therefore engaged in practices

3   "intended to result" in the sale of unwanted and unused software to customers.  FAC ¶ 52.

4          To summarize, plaintiff alleges that Symantec engaged in a unified course of action to sell

5   her software she did not want, by offering her an either/or choice while in fact charging her for both

6   options, by not informing her that upgrading also included a renewal, and specifically by not

7   informing her, after her 2007 purchase, that NIS 2006 as well as Norton 360 would be renewed in

8   2008.  According to the FAC, all along defendant acted with both knowledge and intent to defraud.

9          Plaintiff has alleged all five elements of fraud with respect to the 2007 transaction. Since all

10  allegations concern the single event of Marolda's purchase of Norton 360, plaintiff in effect avers a

11  unified course of fraudulent conduct with respect to the 2007 sale, which is said to be "grounded in

12  fraud."[4]  All of plaintiff's allegations surrounding the 2007 transaction must, therefore, meet the

13  requirements of Rule 9(b).  Vess, 317 F.3d at 1104.

14         In her briefing and at oral argument, plaintiff contended that her allegations do not rely on a

15  unified course of fraudulent conduct.  This is incorrect.  If the five elements of fraud, as determined

16  by California law, are alleged with respect to an event invoked time and again in the complaint, each

17  cause of action that rests on the factual basis of that event will become part of a unified course of

18  fraudulent conduct.  See Kearns, 567 F.3d at 1126.  If improperly pleaded, the facts allegedly

19  constituting fraud are stripped from each cause of action that invokes them.  Sherman, 94 Fed. Appx.

20  at 575.  In plaintiff's case, once the fraud allegations are stripped, there are few factual allegations

21  left to back her claims.[5]

22         The Ninth Circuit has emphasized that Rule 9(b) requires that plaintiffs plead with

23  particularity the circumstances constituting fraud, especially the time, place, and content of an

24  alleged misrepresentation.  Decker v. GlenFed, Inc., 42 F.3d 1541, 1548 (9th Cir. 1994).  But these

25  circumstances are not enough to establish that any representations made were false, a necessary

26  ingredient of fraud.  Id.  Plaintiff must also state with specificity what made any of the

27  representations false.  Id.  See also Janda v. T-Mobile, USA, Inc., 2009 WL 667206, at *5 (N.D. Cal.

28

United States District Court

For the Northern District of California

1   Mar. 13, 2009) (White, J.); Hockey v. Medhekar, 30 F. Supp. 2d 1209, 1214-1215 (N.D. Cal. 1998)

2   (Patel, J.).

3        Plaintiff alleges that she was presented with an either/or choice between NIS 2006 and

4   Norton 360, which proved false because in actuality she was billed for both products.  FAC ¶ 18.

5   The content of the representation is clearly within plaintiff's knowledge; she may describe the

6   contents of the allegedly false representation in detail, outlining the facts supporting her information

7   and belief, or she may simply attach a copy of the offer, if still extant.  The falsity of the

8   representation must also be alleged with particularity: a copy of Marolda's bill or any other fact

9   indicating that she was charged for both products are key to her claim.

10       As pleaded, it remains a matter of conjecture when exactly plaintiff faced this choice or

11  where the representation was displayed.  Marolda states she purchased Norton 360 on May 21, 2007,

12  but she does not describe where she saw the either/or offer or exactly what language was used: the

13  representation may have been online, on one of the many areas of Symantec's website, in an email

14  message, or in an application bundled with Marolda's Symantec software.  Plaintiff baldly asserts

15  that the Symantec renewal center was deceptive to her, but fails to plead with particularity how and

16  on what occasion this representation was made and how it was related to the 2007 purchase.  FAC ¶

17  45-46.  These sorts of facts form the substance of a complaint, enabling the opposite party to

18  understand the claim and prepare a defense.  See Bly-Magee v. California, 236 F.3d 1014, 1019 (9th

19  Cir. Cal. 2001) (requiring that "allegations of fraud must be specific enough to give defendants

20  notice of the particular misconduct which is alleged to constitute the fraud charged so that they can

21  defend against the charge and not just deny that they have done anything wrong").

22       In current form, plaintiff's allegations regarding the misrepresentations surrounding the 2007

23  transaction do not satisfy the heightened pleading requirements of Rule 9(b). "Averments of fraud

24  must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." Vess,

25  317 F.3d at 1106 (quoting Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir. 1997)).  The circumstances

26  must each be pleaded with specificity.

27

28

10

United States District Court
For the Northern District of California

Plaintiff's allegations of reliance rest on equally unsteady ground.  Plaintiff purchased and downloaded Norton 360, perhaps at the same time and from the same location, but she does not allege that she did so after seeing the alleged misrepresentation.  It is also uncertain what effect the misrepresentation had on Marolda's decision, or whether it was material to her decision to upgrade to Norton 360.  As this court has previously stated, "the same level of specificity is required with respect to [pleading] reliance" as with respect to misrepresentations.  Mazur v. Ebay Inc., 2008 WL 618988, at *13 (N.D. Cal. Mar.  4, 2008) (Patel, J.).  Instead of a carefully crafted narrative that would inform the defendant, this court, and a jury of her claims, plaintiff offers statements that are both conclusory and vague.

As Rule 9(b) indicates, knowledge and intent may be alleged generally.  Plaintiff alleges that Symantec had knowledge of her usage of the software and identity of her computer.  These facts may be pleaded under a relaxed standard, since their substance is within Symantec's knowledge, but some form of factual basis for plaintiff's beliefs must still be asserted.  Wool, 818 F.2d at 1440.

It became apparent at oral argument that plaintiff labors under the misapprehension that because the alleged misrepresentation was an omission or nondisclosure, rather than an outright false representation, it need not be pleaded with specificity required for elements of fraud.  The Ninth Circuit has recently clarified that claims of nondiscosure and omission, as varieties of misrepresentations, are subject to the pleading standards of Rule 9(b).  Kearns, 567 F.3d at 1126-27.  In Kearns, the Ninth Circuit recognized that its decision in Vess had relied on an incomplete list of the elements of fraud, derived from a California appellate court decision rather than from the controlling, and more exhaustive, California Supreme Court ruling in Engalla v. Permanente Med. Group, Inc., 15 Cal. 4th 951, 974 (1997).  As a result, when plaintiff alleges omission in conjunction with the other four fraud factors, she must plead with specificity, just as the plaintiff in Kearns.

In this case, to plead the circumstances of omission with specificity, plaintiff must describe the content of the omission and where the omitted information should or could have been revealed, as well as provide representative samples of advertisements, offers, or other representations that plaintiff relied on to make her purchase and that failed to include the allegedly omitted information.

11

1    Plaintiff's complaint should also include samples of materials documenting both her 2006 and 2007

2    purchases that leave out the essential information that NIS 2006 would be automatically renewed.

3            Plaintiff's pleading of the facts surrounding the 2007 transaction is woefully inadequate and

4    certainly falls short of the level of specificity required under the heightened pleading standard.  A

5    succinct, plain statement, reflecting an adequate consideration of whether fraud need be alleged at all

6    and advancing a coherent, well-documented narrative would have sufficed.  As it stands, the

7    inadequacy of the pleading vitiates every claim based on the 2007 transaction.

8            The court now must consider the rest of plaintiff's FAC, after discarding plaintiff's

9    inadequate allegations of fraud regarding the 2007 transaction.  For each of plaintiff's eight causes

10   of action, the court considers the elements needed to state a claim and examines whether the facts

11   pleaded, less those included in the 2007 unified course of fraudulent conduct, support the claims.

12

13   II.      First Cause of Action: Consumer Legal Remedies Act

14           Sections 1770(a)(5), (7), (9), (14), and (16) of the CLRA require that plaintiff plead that she

15   was the victim of defendant's false representations.  Plaintiff must also plead she "suffer[ed] damage

16   as a result of" defendant's false representation.  Cal. Civ. Code § 1780(a).  California state and

17   federal courts considering these claims have required plaintiffs to demonstrate the statutory causal

18   connection by showing that they have acted in reliance on the alleged misrepresentation.  See, e.g.,

19   Cattie v. Wal-Mart Stores, Inc., 504 F. Supp. 2d 939, 946 (S.D. Cal. 2007) (requiring that plaintiff

20   allege reliance on false representations in advertisements in a false advertising case); Anunziato v.

21   eMachines, Inc., 402 F. Supp. 2d 1133, 1138 (C.D. Cal. 2005) (acknowledging the reliance element

22   of a CLRA claim); Caro v. Procter & Gamble Co., 18 Cal. App. 4th 644, 668 (1993) (stating that a

23   plaintiff can show reliance by alleging that without the misrepresentation she would not have acted

24   as she did).  As this court has previously indicated, to state a claim under section 1170 of the CLRA,

25   a plaintiff need not plead fraud.  See Nordberg v. Trilegiant Corp., 445 F. Supp. 2d 1082, 1097 (N.D.

26   Cal. 2006) (Patel, J.).  The Ninth Circuit has also maintained that while Rule 9(b) can apply to

27   claims brought under the CLRA, fraud is not an essential element of a proper CLRA claim.  See,

28
                                                         12

United States District Court

For the Northern District of California

e.g., Kearns, 567 F.3d at 1125; Vess, 317 F.3d at 1103.  After all, only three of the five elements of fraud are necessary to state a claim under the CLRA: misrepresentation, reliance, and damages.

Section 1770(a)(5) concerns representations that the product had a characteristic that it did not actually have.  Plaintiff's pleading of the 2006 transaction meets the scope of this section, insofar as the absence of a renewal feature is a characteristic.  However, the CLRA also requires pleading damages that result from the misrepresentation, which plaintiff has failed to do.  Notably, this section is inapposite to the facts alleged about the 2007 transaction, even assuming that they had been properly pleaded, since plaintiff does not dispute that Norton 360 had all the characteristics advertised.

Section 1770(a)(7) focuses on the product being of a different quality or grade than represented.  Plaintiff does not allege any malfunctions or poor workmanship in either product.

Section 1770(a)(9) is the only subsection that requires pleading fraud, since it specifically requires intent to defraud, which, in turn, implies knowledge of the falsity.  Of course, plaintiff did not allege intent with respect to the NIS 2006 misrepresentations, and her allegations of fraud in 2007 are insufficiently pleaded.

Section 1770(a)(14) addresses representations that a product included rights, remedies, and obligations that it did not have.  Insofar as plaintiff had a right to be free of Symantec's software at the end of a year, her pleadings of the 2006 transactions may constitute a sufficient base for a claim. The defect however lies in plaintiff's inability to plead damages resulting from her being free of Symantec software when, at the end of the year, she purchased a Symantec product with similar functionality.  If the 2007 transaction can be construed as involving plaintiff's right to be free of NIS 2006 after upgrading to Norton 360, it too can serve as base for a claim, if properly pleaded. Plaintiff does alleges damages stemming from the 2007 transaction, so the defect is merely in plaintiff's failure to correctly plead fraud.

Finally, section 1770(a)(16) makes it a violation to represent that the subject of a transaction has been supplied in accordance with a previous representation when it fact it has not.  The subjects

1  of the 2006 and 2007 transactions, NIS 2006 and Norton 360 respectively, were delivered as

2  represented.  Plaintiff does not allege otherwise.

3          For these reasons, plaintiff's CLRA claim is dismissed without prejudice.

4

5  III.      Second Cause of Action: Unfair Competition Law

6          The UCL prohibits "unlawful, unfair or fraudulent business act[s] or practice[s]" and "unfair,

7  deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.  To state a claim

8  under the UCL, a plaintiff must plead that: (1) defendant engaged in one of the practices prohibited

9  by the statute; and (2) plaintiff suffered actual injury in fact as a result of defendant's actions.  Laster

10  v. T-Mobile United States, Inc., 407 F. Supp. 2d 1181, 1194 (S.D. Cal. 2005).  While fraud is not a

11  necessary element of a successful UCL claim, when fraud is alleged, the heightened pleading

12  standard of Rule 9(b) applies.  Kearns, 567 F.3d at 1125; see also In re Tobacco II Cases, 46 Cal. 4th

13  298, 325 (2009) (recognizing that the UCL may afford relief even when the unfair business practice

14  was not fraudulent).  Relief under the UCL is limited to injunction and restitution.  Massachusetts

15  Mutual Life Ins. Co. v. Superior Court, 97 Cal. App. 4th 1282, 1288 (2002).

16          The California Supreme Court has held that, when UCL claims involve fraud, such as

17  misrepresentations to consumers or false advertising, a plaintiff must plead actual reliance on

18  defendant's alleged misrepresentation.  Id. at 326; see also id. at 325, n.17 (noting that many unfair

19  business practices that might harm a consumer need not originate in fraud).  "[R]eliance is proved by

20  showing [that] in [the] absence [of defendant's misrepresentation] the plaintiff 'in all reasonable

21  probability' would not have engaged in the injury-producing conduct."  Id. (citations omitted).  The

22  plaintiff does not have to show, however, that the misrepresentation was the sole cause, or even the

23  principal cause, of the injury: it is enough that it has played a part in causing harm to the plaintiff.

24  Id. at 327-28.  When the plaintiff is part of a class, which defendant has targeted by an "extensive

25  and long-term advertising campaign," individual class members need not prove reliance, a

26  significant factor to consider at the certification stage.  Id. at 324, 328.

27

28                                                          14

United States District Court

For the Northern District of California

Here, plaintiff makes several allegations that fall within the scope of the UCL.  Defendant allegedly (1) engaged in a practice of billing for unwanted and unused renewals, FAC ¶ 58; (2) systematically breached existing contractual obligations, FAC ¶ 59; and (3) failed to inform consumers that they would be charged for both upgrades and renewals, while portraying the two options as mutually exclusive, FAC ¶ 61.  The first two allegations do not involve fraud, and need only be pleaded under the requirements of Rule 8(a).  The third statement does allege a misrepresentation by omission, and, as such, it falls under the heightened pleading standard of Rule 9(b).

Insofar as defendant's practice of billing for unwanted renewals is concerned, plaintiff fails to include enough facts to state a claim.  As previously discussed, plaintiff has failed to plead the circumstances surrounding the 2007 claim with the specificity Rule 9(b) requires.  However, for guidance going forward, the court considers the allegations.  Plaintiff alleges that the 2007 and 2008 renewals of NIS 2006 were unused and unwanted, FAC ¶¶ 21, 16, 13, causing her injury.  While two instances affecting one person only can hardly qualify as a practice, one instance affecting every member of a class of customers could.  To show that Symantec was engaging in an unfair practice, even under Rule 8(a) Marolda must allege the details of this policy with enough specificity for the defendant and the court to be able to identify it.  The circumstances under which the practice occurred must be spelled out clearly, including the time, place, and manner in which defendant engages in the practice as well as the reason why plaintiff believes the 2007 and 2008 charges were part of a pattern and not merely an isolated incident.

Plaintiff alleges the existence of sales contracts in both 2006 and 2007.  She has specified the dates of the two transactions and provided copies of the sales receipts and order summaries memorializing the alleged contracts.  The 2006 contract allegedly involved the delivery of NIS 2006 with no On-Going Protection while the 2007 contract concerned the delivery of Norton 360 with no renewal of NIS 2006.  Both NIS 2006 and Norton 360 were delivered, but with additional renewal features, which would constitute a breach.  There is no dispute that Marolda fulfilled her side of the

15

1   agreement, by paying for the software.  She would also have been prejudiced by the alleged breach

2   of either of the two contracts, since she then had to pay for the additional software.[6]

3          Accordingly, plaintiff has properly pleaded a breach of contract claim, which could

4   constitute an unfair business practice within the scope of the UCL.  The systematic breach of

5   contract and unauthorized renewal of obsolete products would directly and serious impact

6   competition in defendant's industry.  See Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel.

7   Co., 20 Cal. 4th 163, 186-87 (1999) (finding that unfairness under the UCL must "be tethered to

8   some legislatively declared policy or proof of some actual or threatened impact on competition").[7]

9          Finally, Marolda's misrepresentation allegation triggers examination under a heightened

10  pleading standard.  Her CLRA claim is deficient in the pleading of misrepresentation, damage, and

11  reliance; her UCL claim fares no better.

12         To summarize, two of plaintiff's three UCL claims are dismissed without prejudice while the

13  third one, alleging systematic breach of contract, remains.

14

15  IV.    Third Cause of Action: False Advertising Law

16         To state a claim under the FAL plaintiff must allege that defendant intentionally made

17  statements it knew or should have known to be untrue or misleading thereby inducing consumers to

18  enter into obligations related to the misrepresented product.  Cal. Civ. Code § 17500.

19         Since plaintiff has already pleaded a unified course of fraudulent conduct with respect to the

20  2007 transaction, any alleged misrepresentations made in relation to that sale must be examined

21  through the lens of Rule 9(b).  Plaintiff does not allege that defendant was acting intentionally in

22  2006 when it allegedly misrepresented the features bundled with NIS 2006.

23         Contrary to plaintiff's arguments, her claim does not even reach the question whether

24  Symantec's alleged advertising was untrue or misleading, or whether consumers relied on such

25  advertisements.  To reach that stage, plaintiff must first identify with some specificity what the

26  allegedly false representations contained, who made them, where, and whether plaintiff had even

27  seen them.  The facts surrounding the 2007 transaction may hold some of the answers to these

28

1   questions, but they are pleaded with insufficient specificity to make a claim of false advertising

2   plausible.  Accordingly, plaintiff's FAL claim is dismissed without prejudice.

3

4   V.      Fourth Cause of Action: Breach of Contract

5           "A cause of action for breach of contract requires pleading of a contract, plaintiff's

6   performance or excuse for failure to perform, defendant's breach and damage to plaintiff resulting

7   therefrom."  McKell v. Washington Mutual, Inc., 142 Cal. App. 4th 1457, 1489 (2006).

8           Because plaintiff pleads breach of contract as the alternative to her fraud claim, her pleadings

9   need only meet the requirements of Rule 8(a).  While not as detailed and precise as it could have

10  been, the breach of contract claim is sufficient.  Plaintiff alleges that the 2006 sale was subject to an

11  implied contract that NIS 2006 would not have an automatic renewal feature.  As defendant

12  correctly points out, plaintiff will ultimately have to prove the existence of conduct from which this

13  promise may be implied.  See Weitzenkorn v. Lesser, 40 Cal. 2d 778, 795 (1953); see also Guz v.

14  Bechtel Nat. Inc.,  24 Cal.4th 317, 345 (2000) (evidence that a company had "an unwritten practice

15  or policy" which was "reasonably relied on" is required to support a finding of such an implied

16  agreement).

17          At the pleading stage, however, it is enough for plaintiff to allege such conduct with some

18  specificity, which she does by attaching screenshots of defendant's website at the time of the 2006

19  and 2007 purchases.  The terms of the implied contracts can also be found in the FAC, albeit in

20  laconic form: Symantec would provide NIS 2006 and, later, Norton 360, without any subsequent

21  renewals of NIS 2006.  This contractual term was material since subsequent renewals were billed to

22  Marolda's account.  The breach occurred when NIS 2006 was renewed in 2007 without any further

23  action on Marolda's part.

24          Since plaintiff does not allege any facts supporting the existence of an express contract in

25  either 2006 or 2007 that contained any terms related to the absence of a renewal feature, her breach

26  of express contract claim is dismissed without prejudice.  Her breach of implied contract claim is

27  properly pleaded.  Notably, in so ruling, the court has construed plaintiff's pleadings in the light

28

United States District Court

For the Northern District of California

most favorable to her claims, which involved reading implied contract as an alternative theory to express contract.  It is not entirely clear from the complaint, though, if plaintiff's intention was indeed to style her implied contract claim as an alternative pleading or simply failed to plead sufficient facts for an express contract claim.  Plaintiff is strongly urged to take the court's leave to amend as an opportunity to restate her contract claims and clarify her intentions regarding pleading claims in the alternative.

**VI.      Fifth Cause of Action: Breach of Covenant of Good Faith and Fair Dealing**

"[E]very contract [includes] an implied covenant that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract."  Locke v. Warner Bros., 57 Cal. App. 4th 354, 363 (1997).

With respect to the implied contracts discussed above, Symantec would have a duty to deal in good faith with plaintiff.  Charging her for a renewal she has not requested and which was in fact specifically highlighted as one of the things that would not occur under the contract would constitute a breach.  Plaintiff need plead no more.

However, Marolda's claim fails with respect to any express contracts since the existence of any such contract has not been properly pleaded.  Even if the receipts and invoices constituted express contracts, their terms refer to the products themselves as the fruits of the purchase.  None of Symantec's actions prejudice plaintiff's interest in the purchased products themselves, which plaintiff acknowledges had been delivered.

Plaintiff's claim of breach covenant of good faith and fair dealing is properly pleaded under a theory of implied contract and dismissed without prejudice under a theory of express contract.  The cautionary note that applies to plaintiff's implied contract claim also holds here.  Plaintiff would be well advised to revisit her breach of duty of good faith claim and attempt to avoid the undesirability of stacking an implied duty of good faith claim on an implied contract claim.

18

United States District Court

For the Northern District of California

## VII.    Sixth Cause of Action: Money Had and Received

"In an action for money had and received it is generally necessary for the plaintiff to prove only his right to the money and the defendant's possession; and any facts, circumstances or dealings from which it appears that the defendant has in his hands money of the plaintiff which he ought in justice and conscience to pay over to him, are competent evidence to support the action." County of San Bernardino v. Sapp, 156 Cal. App. 2d 550, 556 (Cal. App. 1958).

Since plaintiff has properly pleaded at least two claims under which she could be entitled to recover the cost of the improperly renewed NIS 2006 subscription, her claim for money had and received stands.

## VIII.    Seventh Cause of Action: Unjust Enrichment

In this case, plaintiff seems to construe "unjust enrichment" as "restitution" by another name. Should her express contract claims fail, as they did here, plaintiff is entitled to seek recovery of any damages proven under other theories.  See Nordberg v. Trilegiant Corp., 445 F. Supp. 2d 1082, 1099-1100 (N.D. Cal. 2006) (Patel, J.) (discussing in detail the California law on unjust enrichment and allowing plaintiffs to seek restitution); Mazur, 2008 WL 618988 at *14 (allowing plaintiff to assert inconsistent theories of recovery in a complaint as long as duplicative recovery is addressed at trial).

## IX.    Eighth Cause of Action: Declaratory Relief

Plaintiff may well be proven to be entitled to declaratory relief.  It would be improper to dismiss the possibility of plaintiff obtaining declaratory relief at the pleading stage.

## CONCLUSION

For the foregoing reasons, the court orders the following with respect to defendant's motion to dismiss:

1) with respect to the CLRA claim the motion is GRANTED and plaintiff has leave to amend the FAC in a manner consistent with this order;

19

1        2) with respect to the UCL claim the motion is GRANTED in part and DENIED in part;

2   plaintiff has leave to amend the FAC in a manner consistent with this order;

3        3) with respect to the FAL claim the motion is GRANTED and plaintiff has leave to amend

4   the FAC in a manner consistent with this order;

5        4) with respect to the contract claim the motion is GRANTED with respect to the express

6   contract claims and DENIED with respect to the implied contract claims; plaintiff has leave to

7   amend the FAC in a manner consistent with this order;

8        5) with respect to the breach of covenant of good faith and fair dealing the motion is

9   GRANTED with respect to the express contract claims and DENIED with respect to the implied

10  contract claims; plaintiff has leave to amend the FAC in a manner consistent with this order;

11       6) with respect to the money had and receive, unjust enrichment, and declaratory relief

12  claims, the motion is DENIED.

13       A second amended complaint, if any, shall be filed within thirty (30) days of the date of this

14  order.  An answer or other response should be filed within thirty (30) days of the filing of the second

15  amended complaint.

16

17       IT IS SO ORDERED.

18

19

20

Dated: July 27, 2009                                    _____

21                                                      MARILYN HALL PATEL
                                                        United States District Court Judge
22                                                      Northern District of California

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

United States District Court

For the Northern District of California

**ENDNOTES**

1.  Unless otherwise noted, the court draws on the facts alleged in plaintiff's first amended complaint, see Docket No. 32 (First Amended Class Action Complaint, hereinafter "FAC"), and in the moving papers.  All facts are taken as true and construed in the light most favorable to plaintiff for purposes of this motion only, unless otherwise contradicted by facts which may be judicially noticed by the court.  See Mullis v. U.S. Bankruptcy Court, Dist. of NV, 828 F.2d 1385, 1388 (9th Cir. 1987).

2.  In Vess, the Ninth Circuit used the elements of fraud listed in Hackethal v. National Casualty Co., 189 Cal. App. 3d 1102 (Cal. App. 1987).  317 F.3d at 1105.  Since 1987, the Supreme Court of California has included nondisclosure as a form of misrepresentation.  See Engalla v. Permanente Med. Group, Inc., 15 Cal. 4th 951, 974 (Cal. 1997).  As a result, plaintiff must now plead nondisclosure with particularity.  Kearns, 567 F.3d at 1126-27.

3.  Marolda does enclose a copy of her 2006 receipt, Docket No. 32, Exh. A, and a screenshot of the Symantec website from March 7, 2006, Docket No. 32, Exh. B, Symantec Website in 2006.  The value of the latter exhibit is questionable: this is not a representative sample of the false representations Marolda allegedly had seen.  In the screenshot, NIS 2007 is part of a bundle different than the one listed on Marolda's receipt, and, while normally this might seem a trivial distinction, in a world of highly customized digital products each bundle might well include its own set of features.  The exhibit's value is thus limited to providing a general sense of how the website allegedly looked on June 17, 2006 when Marolda made her actual purchase.

    Perhaps unwisely, plaintiff also seeks to draw the court's attention to Marolda's 2006 order summary, wherein Symantec purportedly stated that it would not automatically renew NIS 2006 See Smith Dec., Docket No. 39, Exh. A (Order Summary).  Plaintiff's expectations of the game-changing properties of that document are greatly overstated.  Indeed, a close reading of the section describing On-Going Protection reveals that Symantec promises not to renew NIS 2006 only after the consumer has canceled the On-Going Protection features by signing in on her online Norton account and after she has received a response email confirming the cancellation.   If anything, the document hurts plaintiff's cause, by diminishing the credibility of her allegations.  It is also unclear if the exhibit is an accurate copy of the order summary Marolda received after her purchase.

4.  There is even some indication that pleading a unified course of fraudulent conduct may have been plaintiff's intention when she described Symantec's actions as "fraudulent and unfair business practices."  FAC ¶ 6.

5.  As the court emphasized at oral argument, plaintiff would be well advised to reiterate the relevant facts, in a clear and thorough manner, for each of her causes of action.  Whatever its professed virtues in cases where multiple causes of action arise from the same nucleus of operative facts, the practice of incorporating claims or factual allegations by reference is particularly ill-suited to a situation where pleading with specificity is incumbent.

6.  The two contracts cannot coexist as alleged.  If the 2006 contract is assumed to be true, Symantec could not have contracted in 2007 to honor the 2006 contract and not renew NIS 2006, since there would have been no consideration given for such a promise.

7.  The parties differ on whether Cel-Tech's tethering requirement applies to consumer actions as well as challenges brought by competitors.  This point is immaterial, since plaintiff's allegations easily meet the tethering requirement.