LAW OFFICES OF THOMAS M. MULLANEY
Thomas M. Mullaney
708 Third Avenue, Suite 2500
New York, New York 10017
Tel 212.223.0800 –
Email: mulllaw@msn.com

LARRY D. DRURY, LTD.
Larry D. Drury
205 West Randolph Street, Suite 1430
Chicago, Illinois 60606
Tel. 312.346.7950 – Fax 312.346.5777
Email: ldrurylaw@aol.com

BROWNE WOODS GEORGE LLP
Eric M. George (No. 166403)
Michael A. Bowse (No. 189659)
2121 Avenue of the Stars, Suite 2400
Los Angeles, California  90067
Tel. 310.274.7100 / Fax 310.275.5697
Email: egeorge@bwgfirm.com
        mbowse@bwgfirm.com

BROWNE WOODS GEORGE LLP
Lee A. Weiss
49 W. 47th Street, 15th Floor
New York, New York 10018
Tel. 212.354.4901 / Fax 212.354.4904
Email: lweiss@bwgfirm.com

Attorneys for Plaintiff Diane Marolda,
Individually and On Behalf of All Others
Similarly Situated

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DIANE MAROLDA, Individually And On Behalf Of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> SYMANTEC CORPORATION <br><br> Defendant. | Case No. 3:08-CV-05701-MHP. <br><br> **PLAINTIFF DIANE MAROLDA'S OPPOSITION TO MOTION TO DISMISS SECOND AMENDED COMPLAINT BY DEFENDANT SYMANTEC CORP.** <br><br> Date:   February 22, 2010 <br> Time:  2:00 p.m. <br> Courtroom: 15, 18th Floor <br><br> Complaint Filed: December 19, 2008 <br> Trial Date:      Not set yet <br> The Honorable Judge Marilyn Hall Patel |

PLAINTIFF MAROLDA'S OPPOSITION TO MOTION TO DISMISS
SECOND AMENDED COMPLAINT BY DEFENDANT SYMANTEC

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ...................................................................................1

II.   FACTUAL BACKGROUND AND RELEVANT PROCEDURAL
      HISTORY.............................................................................................1

      A.  The Court Has Sustained The Majority Of Plaintiff's Claims ...............1

      B.  The Second Amended Complaint...........................................................3

III.  ARGUMENT .......................................................................................5

      A.  Legal Standard On A Motion To Dismiss................................................5

      B.  Plaintiff's Cause Of Action For Implied Contract Still States
          A Plausible Claim For Relief ................................................................8

      C.  No Express Contract Precludes Implied Contract Claim ......................10

          1.  Symantec Misapprehends *Gerlinger*.................................................11

          2.  Symantec Fails To Limit Its Motion To "New" Claims ..................11

      D.  This Court Has Previously Sustained Plaintiff's Well-Pleaded
          UCL Claim ...........................................................................................12

          1.  The Court's Ruling Concerning What Conduct May Be
              "Unfair" Under The UCL Is Correct

      E.  The Court Should Sustain Plaintiff's Unjust Enrichment Claim
          Again ...................................................................................................15

      F.  Plaintiff's Previously Sustained Money Had And Received Claim
          Should Be Sustained Again ...................................................................17

      G.  Plaintiff's Previously Sustained Declaratory Judgment Claim
          Should Be Sustained Again ...................................................................17

IV.   CONCLUSION .................................................................................18

[Title]

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page</u>

3

**CASES:**

4

*al-Kidd v. Ashcroft*,
     580 F.3d 949 (9th Cir. 2009)..........................................................................6

5

6

*Ashcroft v. Iqbal*,
     556 U.S. __, 129 S.Ct. 1937 (2009) ............................................................6

7

*Bell Atl. Corp. v. Twombly*,
     550 U.S. 544 (2007) .......................................................................................6

8

9

*Branch v. Tunnell*, 1
     4 F.3d 449 (9th Cir. 1994).............................................................................7

10

*Gerlinger v. Amazon.com, Inc.*,
     311 F. Supp. 2d 838 (N.D. Cal.2004) .....................................................11,15

11

12

*Guerrero v. Gates*,
     442 F.3d 697 (9th Cir. 2006)..........................................................................5

13

*Lipton v. Pathogenesis Corp.*,
     284 F.3d 1027 (9th Cir. 2002)........................................................................6

14

15

*National Rural Telecommunication Coop. v. DIRECTV, Inc.*,
     319 F. Supp. 2d 1059 (C.D. Cal. 2003)........................................................13

16

*Nordberg v. Trilegiant Corp.*,
     445 F.Supp.2d 1082 (N.D.Ca. 2006) ..................................................16,17,18

17

18

*Shum v. Intel Corp.*,
     2008 WL 4414722, *11 (N.D.Cal. Sept. 28, 2008) .....................................16

19

*Sybersound Records, Inc. v. UAV Corp.*,
     517 F. 3d 1137, 1152 (9th Cir. 2008)..........................................................14

20

21

*Tomlinson Black North Idaho v. Kirk-Hughes*,
     2009 WL 4875338, *1, C.A.9 (Idaho) .........................................................16

22

*Watson labs, Inc. v. Rhane-Poulenc Rorer, Inc.*,
     178 F. Supp. 2d 1099 (C.D. Cal. 2001)....................................................13,14

23

24

*Yang v. <u>Dar Al-Handash Consultants</u>*,
     250 Fed. Appx. 771 (9th Cir. 2007) .............................................................16

25

26

27

28

[Title]

1

**TABLE OF AUTHORITIES**
**(continued)**

2

Page

3   **CALIFORNIA CASES:**

4   *Allied Grape Growers v. Bronco Wine Ca.,*
       203 Cal. App. 3d 432, 249 Cal. Rptr. 872 (Cal. Ct. App. 1988)..................14

5

6   *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.,*
       20 Cal. 4th 163 (1999).........................................................................12,13,14

7   *Klein v. Earth Elements, Inc.,*
       59 Cal. App. 4th 965 (1997).........................................................................13

8

9   *McBride v. Boughtan,*
       123 Cal. App. 4th 379, 20 Cal. Rptr. 3d 115 (Cal. Ct. App. 2004)...............17

10  *Motors, Inc. v. Times Mirror Co.,*
       102 Cal. App. 3d 735, 162 Cal. Rptr. 543 (1980) ........................................14

11

12  *Podolsky v. First Healthcare Corp.,*
       50 Cal. App. 4th 632 (1996).........................................................................13

13  *Saunders v. Superior Court,*
       27 Cal.App.4th 832, 33 Cal.Rptr.2d 438 (Cal. Ct. App. 1994).....................14

14

15  *Smith v. State Farm Mut. Auto. Ins. Co.,*
       93 Cal. App. 4th 700, 113 Cal. Rptr. 2d 399 (Cal. Ct. App. 2001)...............14

16

17

18

19

20

21

22

23

24

25

26

27

28

1    **I.      INTRODUCTION**

2          Although this Court sustained every one of the claims now asserted in

3    Plaintiff's Second Amended Complaint ("SAC") when it ruled upon Symantec's

4    motion to dismiss the First Amended Complaint ("FAC"), and despite the fact that

5    Symantec recently entered into a settlement agreement with the Attorney General of

6    the State of New York concerning the deceptive sales practices at issue in this

7    action, Symantec has nevertheless filed another motion to dismiss.  As a purported

8    justification for reprising arguments that this Court has already rejected once

9    before, Symantec claims incorrectly that Plaintiff's Second Amended Complaint

10   has altered the factual allegations and legal theories for the claims in the First

11   Amended Complaint that this Court has sustained.  Plaintiff did no such thing.

12   Instead, she merely deleted certain causes of action and added certain allegations to

13   conform the complaint to the Court's prior ruling.

14   **II.     FACTUAL BACKGROUND AND RELEVANT PROCEDURAL HISTORY**

15          **A.      The Court Has Sustained The Majority Of Plaintiff's Claims**

16          On July 17, 2009, this Court issued a Memorandum and Order re: Motion to

17   Dismiss Plaintiff's First Amended Complaint (the "Order"), sustaining Plaintiff's

18   Second Cause of Action for violations of California's Unfair Competition Law (the

19   "UCL"), Fourth Cause of Action for breach of contract, Fifth Cause of Action for

20   Breach of the Implied Covenant of Good Faith and Fair Dealing, Sixth Cause of

21   Action for money had and received, Seventh Cause of Action for unjust

22   enrichment, and the Eighth Cause of Action for declaratory judgment.

23          In its Order, the Court highlighted several of Plaintiff's factual allegations,

24   including that "On July 17, 2005, Marolda purchased System Work ("SW")."

25   Order at 2.  Next, the Order notes that "she chose to purchase NIS 2006 on June 17,

26   2006, with the belief that this software product would not include On-Going

27   Protection".  *Id.*  Next, "On May 21, 2007 Marolda was again offered the

28   opportunity to review NIS 2006 <u>or</u> upgrade to another newer product, Norton 360,

240487_1.DOC                                    - 1 -                          3:08-CV-05701-MHP

1   for $59.99." *Id.*  She chose to upgrade, rather than renew.  *Id.* at 2.  "A year later,

2   Marolda received another offer to renew <u>or</u> to upgrade."  *Id.* at 3 (emphasis added).

3   Again, Plaintiff chose to upgrade, rather than renew.  *Id.*  Upon realizing that she

4   was charged for both a renewal and in upgrade in 2007 and 2008, despite her belief

5   that accepting the upgrade offer would discontinue the renewal of the older, now-

6   obsolete products, Plaintiff sought a refund.  *See id.*  No refund was granted to

7   Plaintiff for the unwanted renewal of software in 2007.

8        On the basis of these allegations, the Court denied Symantec's motion to

9   dismiss Plaintiff's UCL claim to the extent it was predicated upon Symantec's

10  breaches of contract.  *Id*. at 15-16 ("The systematic breach of contract and

11  unauthorized renewal of obsolete products would directly and serious impact

12  competition in defendant's industry.").  The Court found that Plaintiff had

13  sufficiently alleged that Symantec's offer to renew ***or*** upgrade the older software

14  products included an implied promise to not charge Plaintiff for any renewal of the

15  older product if she chose to upgrade.  Order at 17.

16       The Court also sustained Plaintiff's breach of contract and breach of the

17  implied covenant of good faith and fair dealing claims to the extent they were based

18  upon Symantec's alleged breach of an implied contract to not charge for the

19  renewal of the products from which Plaintiff had upgraded.  *Id*. at 17-18.

20       The Court also denied Symantec's motion to dismiss Plaintiff's causes of

21  action for money had and received, unjust enrichment and declaratory relief,

22  because Plaintiff had adequately pled the existence of an implied contract to not

23  charge for renewal and Symantec's breach of that implied contract.

24       With the exception of the claim for breach of the covenant of good faith and

25  fair dealing claim (which has not been separately alleged in the Second Amended

26  Complaint), each of these causes of action and the allegations supporting these

27  causes of action are continued from the First Amended Complaint to the Second

28  Amended Complaint.  Indeed, consistent with the Court's observations and

**PLAINTIFF MAROLDA'S OPPOSITION TO MOTION TO DISMISS**
**SECOND AMENDED COMPLAINT BY DEFENDANT SYMANTEC**

1   suggestions, the Second Amended Complaint expands upon these facts by

2   identifying the specific statements that created the implied contract.

3            **B.**    **The Second Amended Complaint**

4        In her Second Amended Complaint, as she did in her First Amended

5   Complaint, Plaintiff focuses her claims on Symantec's improper and illegal double

6   charging Plaintiff in mid-2007 for 2 redundant software products (Norton Internet

7   Security 2006 and Norton 360) even though Plaintiff opted to upgrade to Norton

8   360, rather than renew Norton Internet Security 2006.

9        Consistent with the description of Plaintiff's allegations in the Order,

10   Plaintiff's SAC alleges that "Plaintiff began her customer relationship with

11   Symantec on July 17, 2005 with the purchase of a one-year subscription to

12   Symantec's SystemWorks anti-virus software for $39.99."  SAC, ¶7.[1]  Plaintiff

13   does not allege that SystemWorks had On-going Protection at the time she began

14   her customer relationship with Symantec in 2005.  Nor does she allege that

15   SystemWorks came with an automatic renewal feature, under any nomenclature, at

16   the time of purchase.  On the contrary, the SAC, like the First Amended Complaint

17   ("FAC"), attaches a June 17, 2006 invoice from Symantec showing that, when

18   Plaintiff Marolda opted to upgrade from SystemWorks to Norton Internet Security

19   2006 in June 2006, she received "zero" "SystemWorks Basic Upgrades," and "one"

20   NIS 2006 Upgrade.  *See* SAC, Ex. B; FAC, Ex. A.  All of Plaintiff's account

21   information was disclosed in this document, a practice that Symantec later changed.

22        In May of 2007, Symantec sent Plaintiff a so-called Pre-Billing Notification

23   reminding her of the impending expiration date of her NIS 2006 year-long software

24   license.  SAC at ¶ 17.  Plaintiff contemporaneously received a solicitation from

---

25   [1]    Plaintiff's allegation that SystemWorks was the first software subscription

26   that she purchased is based on that invoice from Symantec.  That belief was
     seemingly confirmed by Symantec in a June 17, 2006 Order Confirmation provided

27   by Symantec's counsel, docket No. 39, although Symantec later advised that it
     could not be sure that it was a copy of a document actually sent to Plaintiff., docket

28   44.  Exhibit 1 to the Declaration of Glenn Taylor reconfirms that Marolda originally
     owned SystemWorks.

**PLAINTIFF MAROLDA'S OPPOSITION TO MOTION TO DISMISS
SECOND AMENDED COMPLAINT BY DEFENDANT SYMANTEC**

1  Symantec, also by electronic mail, to upgrade to a discrete but functionally

2  equivalent software called Norton 360 2.0 ("Norton 360"). *Id*.

3      Just as Symantec had presented (and treated) the option to renew

4  SystemWorks or upgrade to NIS 2006 in June 2006, Symantec presented the

5  proposed upgrade to Norton 360 to Plaintiff as an ***alternative*** to renewing her NIS

6  2006 subscription for another year. *Id*. at ¶ 58.  In its upgrade solicitation,

7  Symantec routed Plaintiff to its "Renewal Center". *Id*. at ¶10.  In the Renewal

8  Center, Symantec offered Plaintiff "'multiple ways to extend [her] subscription',

9  namely by subscription 'renewal for [her] current product ***or*** purchase [of] an

10  upgrade product.'" *Id*. (emphasis added).  That clearly offers Plaintiff two

11  alternative options – to renew or to upgrade.

12      Indeed, in the Renewal Center, Symantec made it even clearer that it was

13  presenting Plaintiff with a choice between upgrading to Norton 360 or merely

14  renewing NIS 2006.  In the "Renewal" Center, Symantec informed Plaintiff (and

15  every other consumer routed to the Renewal Center) of her renewal options at a

16  page entitled "Purchase Option." *Id.* at ¶35.  Those three options were: (1)

17  "Recommended", which was an upgrade from currently installed software and the

18  purchase of additional software products; (2) "Upgrade" from the then-currently

19  installed software (NIS 2006) only; and, (3) "Renew", which was a subscription

20  renewal for the then-currently installed software, without an upgrade.  *Id*.

21      Apart from the way it was presented, there would be no reason for a

22  consumer to renew NIS 2006 after upgrading to another software program where

23  both programs were authorized for use on the same computer, and no other.  *Id*. at ¶

24  19.  The two programs were completely redundant.  *Id*. at ¶ 11.  Plaintiff had

25  authorized the same computer for both programs, which Symantec knew.  *Id*. at ¶

26  23.  Symantec can see what computers are authorized to run its licensed software

27  programs.  Because Marolda had only authorized one computer, it knew that

28  Plaintiff did not want or need to renew the now-obsolete NIS 2006.  *Id*.  These

1    allegations track the language of the Order.  *See* Order at 8.

2         Of the alternative options offered to her, Plaintiff chose to upgrade, as no

3    doubt did tens of thousands of other customers.  *Id*. at ¶18.  Despite Plaintiff's

4    acceptance of the offer to upgrade from NIS 2006 to Norton 360 (and her rejection

5    of the other options, including the renewal option), Symantec charged Plaintiff for

6    the unwanted renewal of NIS 2006 on June 3, 2007, nearly two weeks after

7    charging Plaintiff for her upgrade to Norton 360 for use on the same computer.  *Id*.

8    at ¶ 19.  Importantly, Symantec treated her 2007 Upgrade and Renewal differently

9    than her 2006 transaction in two respects: 1) it did not charge for an automatic

10   renewal for the previously licensed software in 2006, but it did in 2007 (despite its

11   representations that Plaintiff could chose to renew *or* upgrade in 2007), and ii) in

12   2006 Symantec disclosed the status of the renewed and upgraded software to

13   Plaintiff, but failed to do so in 2007.  SAC, ¶21.

14        Symantec has thus breached its implied contract with Plaintiff which

15   provided that purchasing an upgrade to Norton 360 would stop the automatic

16   renewal of the unwanted NIS 2006 software, and failed to inform Plaintiff at the

17   time of purchase of NIS 2006 that the automatic renewal function of the On-going

18   Protection feature of that software will have to be separately discontinued even if

19   she opts for an upgrade from that software in one year.

20        Just as they did in the First Amended Complaint, these allegations support:

21   (1) a claim for breach of implied contract (Order at 17-18), (2) a claim under

22   California's Unfair Competition Law (Order at 15), (3) a claim for money had and

23   received (Order at 19), and (4) a claim for declaratory relief (Order at 19).

24   III.   **ARGUMENT**

25        A.   **Legal Standard On A Motion To Dismiss**

26        On a motion to dismiss the Court must accept as true all allegations in the

27   complaint and draw all reasonable inferences from those allegations, construing the

28   complaint in the light most favorable to Plaintiff.  *Guerrero v. Gates*, 442 F.3d 697,

1   703 (9th Cir. 2006).  In evaluating a motion to dismiss, the Court should consider

2   "whether the total of plaintiffs' allegations . . . are sufficient."  *Lipton v.*

3   *Pathogenesis Corp.*, 284 F.3d 1027, 1038 (9th Cir. 2002).  The Court may not

4   dismiss if Plaintiffs allege "enough facts to state a claim to relief that is plausible on

5   its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Plaintiff's Second

6   Amended Complaint readily satisfies these standards.

7        All of the claims in the SAC were previously sustained by the Court in the

8   Order resolving Symantec's Motion to Dismiss the First Amended Complaint,

9   which, just like the pending motion, was based upon Plaintiff's purported failure to

10  satisfy *Twombly* and *Iqbal.  See Ashcroft v. Iqbal*, 556 U.S. __, 129 S.Ct. 1937

11  (2009) (five-to-four opinion upholding dismissal of complaint that did not contain

12  facts plausibly showing that defendants, who could not be held liable on *respondeat*

13  *superior* liability, acted with racial or religious animus in detaining certain terrorist

14  suspects in special housing units immediately following the September 11 attack on

15  the World Trade Center).  Although it again relies on *Iqbal*, Symantec does not

16  contend which of the facts alleged in the SAC makes its claims facially implausible,

17  when those same facts satisfied the identical "plausible" test when they were

18  alleged in the FAC.

19       "Facial plausibility" is reached when the factual content alleged "allows the

20  court to draw the reasonable inferences that the defendant is liable for the

21  misconduct alleged."  *Iqbal*, 129 S.Ct at 1949 (*quoting Bell Atlantic*, 550 U.S. at

22  556).  "'Asking for plausible grounds to infer' the existence of a claim for relief

23  'does not impose a probability requirement at the pleading stage, it simply calls for

24  enough fact to raise a reasonable expectation that discovery will reveal evidence' to

25  prove that claim."  *al-Kidd v. Ashcroft*, 580 F.3d 949, 977 (9th Cir. 2009) (*quoting*

26  *Twombly*, 550 U.S. at 556).  Indeed, "a well-pleaded complaint may proceed even if

27  it strikes a savvy judge that actual proof of those facts is improbable, that 'that a

28  recovery is very remote and unlikely.'"  *Twombly*, 550 U.S. at 556.

1    Apparently recognizing that the SAC alleges everything necessary to state a

2  cause of action under the federal rules, Symantec attempts to rely upon documents

3  outside of the complaint in an effort to contradict some of the Complaint's

4  allegations.  As discussed in Plaintiff's concurrently filed objections, there are

5  several problems with this effort.

6    First, materials beyond the pleadings should not be considered on a motion to

7  dismiss.  *Branch v. Tunnell,* 14 F.3d 449, 453 (9th Cir. 1994) (generally, "a district

8  court may not consider any material beyond the pleadings in ruling on a Rule

9  12(b)(6) motion."); *See also* Plaintiff's Objections to And Motion to Strike

10  Declaration of Glenn Taylor at 1-2; Plaintiff's Objections to And Motion to Strike

11  Declaration of Bruce Haldane at 1-2.

12    Second, the reliability of these declarations and their exhibits is questionable.

13  The documents upon which Symantec and its declarants attempt to rely are not

14  authentic copies of anything, but merely purported reconstructions.  Each declarant

15  admits that Symantec does not keep "actual copies" of the documents they believe

16  were provided to Plaintiff Marolda (or evidently any Symantec customer).  Instead,

17  they assert that the document attached to their declarations contain text "that would

18  have been contained" in the communications that were allegedly sent or available to

19  Plaintiff.  According to the declarants, Symantec has records from which the

20  content of communications actually sent to customers can be determined; but

21  neither declarant provides those records.  Perhaps most importantly, as discussed in

22  the next paragraph, neither declarant represents that the Exhibits to their

23  declarations contain the only text sent to Plaintiff.

24    Third, as discussed more fully below, even if those declarations and the

25  unauthenticated documents attached to them could be considered on a motion to

26  dismiss, they do nothing to resolve the representations upon which Plaintiff's

27  claims are actually based, such as those contained in the Renewal Center.  Neither

28  declarant offers any text that would have been included in the solicitation to

240487_1.DOC                         -- 7 --                      3:08-CV-05701-MHP

1   upgrade to another software sent on or about the time that Marolda's then-current
2   subscription was about to expire.  Nor does either declarant purport to contradict or
3   disprove Plaintiff's allegations detailing the alternative options she was provided by
4   Symantec in the Renewal Center.  Since ***those*** representations are the ones that
5   form the basis of Plaintiff's claims, Symantec's effort to inject extraneous
6   documents on a motion to dismiss is exactly that … extraneous.

7   **B.**      **Plaintiff's Cause of Action For Implied Contract Still States A**
8           **Plausible Claim For Relief**

9           In its order denying in part and granting in part Symantec's motion to dismiss
10  the FAC, the Court rejected Symantec's arguments challenging Plaintiff's breach of
11  implied contract claim.  The Court found that "her breach of implied contract claim
12  is properly pleaded" because its terms were found in the FAC.  Order at 17.
13  Specifically, those terms were Symantec's implied promise that it would provide
14  Norton 360 to Plaintiff without a subsequent renewal of NIS 2006 when it offered
15  her the option to either renew NIS 2006 or upgrade to Norton 360.  Order at 2, 17.

16          In her SAC, Plaintiff continues to allege that same promise, that same
17  implied contract and that same breach, but merely amended her claim to clarify that
18  the SAC's breach of contract action is based exclusively upon an implied, rather
19  than an express, contract (as requested in the Court's order).  *See* Order at 18.  The
20  SAC does not allege the existence of an express contract.  Rather, it makes clear
21  that Plaintiff's cause of action is based upon the implied contract created by
22  Symantec's representations.

23          In its Motion, Symantec pretends that the implied contract that is pled is
24  premised on Marolda's SystemWorks purchase in 2005, and then claims that
25  premise is unfounded.  *E.g.,* Defendant's Mem. at 12.  It makes that claim despite
26  the fact that three of its documents show that Plaintiff in fact owned SystemWorks
27  at the time of her upgrade to NIS 2006.  *See* SAC, Ex. B; FAC, Ex. A.  Symantec
28  also makes that claim without explaining what it is about Marolda's purchase of

240487_1.DOC                          -- 8 --                     3:08-CV-05701-MHP

1   Norton software in 2005 that, even if not called "SystemWorks", excuses its breach

2   of the implied contract formed on May 21, 2007, which provided that the purchase

3   of an upgrade to Norton 360 away from NIS 2006 would discontinue the renewal of

4   that redundant software.

5        Symantec's attempt to manufacture an issue out of the SystemWorks

6   subscription is simply a red herring.  It is and was at least plausible that when

7   Plaintiff elected to upgrade from NIS 2006 to the enhanced, but functionally

8   equivalent Norton 360 in 2007, Symantec impliedly agreed that it would not then

9   charge her for a renewal from the discarded software, particularly where (1) both

10  software programs were authorized by the same vendor (Symantec) for use on the

11  same computer, and (2) Symantec presented the upgrade and renewal options as

12  alternatives in documents provided to Plaintiff.  SAC ¶¶ 11, 12, 18, 19.

13       Moreover, Symantec's second motion to dismiss not only renews prior

14  arguments, but also now relies on an abridged version of allegedly factual

15  arguments that are properly reserved for a motion for summary judgment.  In this

16  abridged version, Symantec omits any argument addressed to the crux of the SAC,

17  which is that Symantec breached the 2007 contracts by charging for a "renewal of

18  an unwanted and unused software program rendered moot by its mutually exclusive

19  upgrade from that software [.]"  SAC, ¶71.  Symantec's motion also requires a

20  finding that only one contract between Plaintiff and Symantec existed, even though

21  this Court has already opined that at least two contracts are at issue.  *See* Order at

22  15 ("Plaintiff alleges the existence of sales contracts in both 2006 and 2007")

23  Accordingly, the SAC also pleads a separate contract for each renewal and each

24  upgrade, contrary to Symantec's assertion that the existence and breach of one

25  over-arching contract was pled.  SAC, ¶69.

26       Symantec's arguments of fact about Plaintiff's license of SystemWorks are

27  also incomplete.  Symantec fails to consider the possibility that when Symantec

28  first offered On-going Protection, allegedly in November 2005, it immediately

1  offered that "protection" to then-current customers, including Marolda.  It seems

2  most implausible that Symantec would keep secret a feature designed to

3  automatically renew its current software subscriptions from current subscribers, and

4  instead only offer it to new customers.  Next, neither Declarant explains why the

5  2005 timing of the introduction of On-going Protection renders implausible

6  Marolda's claims concerning a 2007 transaction.  Nor does either Declarant explain

7  why in 2006 Symantec informed its customers about charges for all of its software

8  subscriptions in one invoice, but charged its invoice format afterwards.  In fact, the

9  decision to redact its billing information after On-going Protection became

10  available, when it would be most informative, bolsters the plausibility of claims of

11  its double-billing.

12       In any event, the SAC alleges that in 2007, Symantec solicited an upgrade

13  from NIS 2006 to Norton 360 as an alternative to a renewal to NIS 2006, without

14  disclosing that she would be charged for both, absent an unmentioned additional

15  step (separately cancelling the renewal of the now-obsolete product) that the

16  upgrade solicitation omits.  Just as it was sufficient when alleged in the FAC, that

17  claim is sufficiently alleged in the SAC.

18       **C.    No Express Contract Precludes Implied Contract Claim**

19       Symantec next argues that the Court should have dismissed Plaintiff's

20  implied contract claim because an express contract allegedly exists that contradicts

21  the terms of the implied contracts of 2006 and 2007.  Defendant's Memo. at 13.

22  Symantec fails to identify or provide the alleged express contract that contradicts

23  the terms of any of the implied contracts.  Symantec also declines to provide either

24  the actual 2007 (or 2006) upgrade solicitation that was sent to Plaintiff, or the text

25  of the solicitation that "would have been" sent to Plaintiff.  Thus, the terms of the

26  2007 implied contract which inform software upgrade purchasers that an upgrade

27  will discontinue the automatic renewal of their previous subscription, remain

28  uncontradicted.

1

### 1.   Symantec Misapprehends *Gerlinger*

Symantec relies upon an incomplete and misleading citation when it suggests that this Court ignored or misunderstood its own ruling in *Gerlinger v. Amazon.com, Inc*., 311 F. Supp. 2d 838, 856 (N.D. Cal.2004), when it sustained Plaintiff's implied contract claim.  The relevant language from *Gerlinger* that Symantec has ignored is as follows:

> An action based on quasi-contract cannot lie where a valid express contract <u>covering the same subject matter</u> exists between the parties [.] It should be noted that plaintiff contends that he should never-theless be permitted to plead unjust enrichment in the alternative.  Such an alternative claim might be stated if in court eight plaintiffs alleged that no express agreement existed between plaintiff and either defendant. Instead, plaintiff has pleaded the opposite [.]

311 F.Supp. 2d at 856.  Mindful of the Court's Order, which was no doubt informed by its own decision in *Gerlinger*, the SAC makes it clear that Plaintiff is not pleading a claim for breach of express contract.  Thus, Plaintiff can properly allege a quasi-contract claim and in the alternative, a claim for unjust enrichment (and money had and received).

### 2.   Symantec Fails To Limit Its Motion To "New" Claims

By Symantec's own authority, its second motion to dismiss must be limited to Plaintiff's "new" claims.  Defendant's Memo at 24.  Symantec does not limit its motion to any allegedly new claims, however, nor explain why the purportedly new claims give rise to a new defense.  *See id.*  Symantec simply asserts the conclusion that the SystemWorks reference is a new factual basis, and the only one, for all of the claims of the SAC.  Then Symantec renews its old arguments on old claims without mentioning SystemWorks again.  Thus, pursuant to the legal standard it cites, Symantec's second motion to dismiss must fail.

**D.**     **This Court Has Previously Sustained Plaintiff's Well-Pleaded**
           **UCL Claim**

Plaintiff's UCL claim has been sufficiently alleged, and has already been sustained by this Court:

> Accordingly, plaintiff has properly pleaded a breach of contract claim,
> which could constitute on unfair business practice within the scope of
> the UCL.  The systematic breach of contract and unauthorized renewal
> of obsolete products would directly and seriously impact competition
> in defendant's industry.  *See Cel-Tech Commc'ns, Inc. v. Los Angeles*
> *Cellular Tel. Co.,* 20 Cal. 4th 163, 186-87 (1999).

Order at 16.

In response, Symantec repeats its argument that, because the Court should not have sustained the breach of implied contract claim, it also erred in sustaining the UCL claim.  However, the Court found that an implied contract was pled because "[o]n May 21, 2007 Marolda was again offered the opportunity to renew NIS 2006 or to upgrade to another newer product, Norton 360, for $59.99."  Order at 2.  By implication, that offer represented that the act of accepting the upgrade would reject the renewal.  SAC, ¶ 10, 58.

Symantec recognizes the frailty of its argument in its footnote 11, where it correctly notes that Marolda did a "cut-and-paste" of the five viable claims from the FAC, and the facts upon which they were based.  Defendant's Memo. at 18, n.11. Defendant also correctly notes that Marolda did not provide "any further factual predicate upon which to base her [sustained] 'claims.'"  *Id.*  This observation flatly contradicts the foundation of Defendant's second motion to dismiss, however, which is based exclusively on the ground that Plaintiff has offered an entirely new factual basis in her SAC.  Id. at 3, 12.

Even in its improper declarations, Symantec offers no factual basis to dispute Plaintiff's allegation that the 2007 upgrade solicitation at least implied that

1    accepting the upgrade offer would reject the automatic renewal.  That is a glaring

2    omission.  The only plausible inference from this omission is that either of

3    Symantec's Declarants, Mr. Haldane or Mr. Taylor, would have opined on what

4    Plaintiff and the class was told in those systematic upgrade solicitations, unless

5    those solicitations supported Plaintiff's case.

6            **1.    The Court's Ruling Concerning What Conduct May Be**

7                 **"Unfair" Under the UCL Is Correct**

8            Recognizing that the SAC's allegations are completely consistent with the

9    Court's Order concerning what unfair conduct violates the UCL, Symantec makes a

10   tepid attempt to argue that the claimed conduct is somehow not unfair.  *See*

11   Defendant's Memo, at 20-21.  Symantec misstates the law in its argument.  In fact,

12   the cases that Symantec does cite for support establish that Marolda's allegations

13   state a UCL claim.  *See* Order at 16

14           The well-established law on this prong of the UCL is that "[i]n general the

15   'unfairness' prong' has been used to enjoin deceptive or sharp practices...."  *Klein v.*

16   *Earth Elements, Inc*., 59 Cal. App. 4th 965, 970 (1997).  Moreover, an "unfair"

17   business practice is actionable under the UCL even if it is not "unlawful."  *Cel-Tech*

18   *Commc'ns, Inc. v. Los Angeles Cellular Tel. Co*., 20 Cal. 4th 163, 180 (1999);

19   *Podolsky v. First Healthcare Corp*., 50 Cal. App. 4th 632, 647 (1996).  In addition,

20   the question of the unfairness of a business practice is ill-suited to determination on

21   a motion to dismiss.

22           The leading federal case that Symantec cites holds: "whether a business act

23   or practice constitutes unfair competition with Section 17200 is a question of fact."

24   *National Rural Telecommunication Coop. v. DIRECTV, Inc.,* 319 F. Supp. 2d 1059,

25   1074 (C.D. Cal. 2003) (quoting *Watson labs, Inc. v. Rhane-Poulenc Rorer, Inc.,*

26   178 F. Supp. 2d 1099, 1117 (C.D. Cal. 2001)).

27           The *DirectTV* Court continues by ruling: "a breach of contract may form the

28   predicted for a section 17200 claim, "provided it <u>also</u> constitutes conduct that is

1  unlawful, or <u>unfair</u> or fraudulent." *Id.* (emphasis added).  The Court continues its

2  analysis of the UCL, by opining that "Courts have defined unfair broadly in order

3  to provide the courts with the maximum discretion []," and that "the test for

4  determining an 'unfair' practice is whether the gravity of the harm to the victim

5  outweighs the utility of the defendant's conduct."  *Id.* at 1075 (quoting *Motors, Inc.*

6  *v. Times Mirror Co.,* 102 Cal. App. 3d 735, 740, 162 Cal. Rptr. 543 (1980)).

7  　　　　Also countering Symantec's argument that the SAC does not properly plead

8  a claim under the UCL is *Smith v. State Farm Mut. Auto. Ins. Co.,* which holds that

9  "an unfair business practice occurs when that practice offends an established public

10  policy or when the practice is immoral, unethical, oppressive, unscrupulous or

11  substantially injurious to consumers."  93 Cal. App. 4th 700, 719, 113 Cal. Rptr. 2d

12  399 (Cal. Ct. App. 2001).  Likewise, *Allied Grape Growers v. Bronco Wine Ca.*

13  holds that in this section of the UCL is framed in "broad, sweeping language

14  precisely to enable judicial tribunals to deal with the innumerable new schemes

15  which the fertility of men's invention would contrive." 203 Cal. App. 3d 432, 451,

16  249 Cal. Rptr. 872 (Cal. Ct. App. 1988).  In *Bronco Wine*, an unfair scheme is any

17  that violates the "fundamental rules of honesty and fair dealing."  <u>Id</u>.  "Unfair", as

18  used in this statute, means any practice whose harm to the victim outweighs its

19  benefits."  *Saunders v. Superior Court*, 27 Cal.App.4th 832, 839, 33 Cal.Rptr.2d 438

20  (Cal. Ct. App. 1994)("fairness" is not a matter to be decided at pleading stage, but

21  rather defendant must "present its side of the story" upon *prima facie* showing of

22  harm).

23  　　　　Symantec's reliance upon *Sybersound Records, Inc. v. UAV Corp*. fares no

24  better, and is misplaced for the additional reason that it evaluates UCL claims

25  between competitors, as opposed to a UCL claim brought by consumers, a critical

26  distinction in California.  517 F. 3d 1137, 1152 (9th Cir. 2008) (citing *Cel-Tech*

27  *Commc'ns, Inc. v. L.A. Cellular Tel.Co.*, 20 Cal. 4th 163, 83 Cal. Rptr. 2d 548

28  (1999)).  Nonetheless, *Sybersound* also concurs that "a breach of contract may form

1     the predicate for a section 17200 claim, provided it also constitutes conduct that is

2     unlawful, or unfair, or fraudulent." *Id.*

3        Thus just like the FAC, the SAC properly pleads a claim under the UCL

4     based upon Symantec's breach(es) of implied contract that are independently

5     unfair.

6        **E.**     **The Court Should Sustain Plaintiff's Unjust Enrichment Claim**

7              **Again**

8        Again basing its reargument on its "entirely new factual predicate" pretext,

9     Symantec asserts that the Court was incorrect in allowing Plaintiff's unjust

10    enrichment claim to proceed alongside the implied contract claim. Defendant's

11    Memo., at 21. Symantec again does not define the alleged new factual predicate for

12    this claim, nor explain how it would preclude a claim that Symantec was unjustly

13    enriched by retaining two payments from consumers who intended to make only

14    one, for the license of two pieces of software, where they used only one. It would

15    not be unjust to return to the Symantec customer funds Symantec received for

16    unwanted and unused automatic renewals of the NIS 2006 software.

17        Defendant's citations in support of its argument for dismissal of the unjust

18    enrichment claim miss the mark because there is no express contract language that

19    expressly covers the subject matter of whether the upgrade solicitation disables the

20    automatic renewal part of the On-going Protection feature of the previous software

21    subscription. The fact that Symantec billed for a renewal of redundant software

22    two weeks after Plaintiff had upgraded from that software suits a claim for unjust

23    enrichment perfectly.

24        As discussed above, this Court's *Gerlinger* opinion does not prevent the

25    Unjust Enrichment claim form going forward. Pursuant to the Order, this claim

26    was sustained because it may be the case that no express agreement exists between

27    the parties that cover the subject matter of the dispute. *See* Order at 19. None has

28    been pled in the SAC. Even if they could be considered here, the Taylor and

**PLAINTIFF MAROLDA'S OPPOSITION TO MOTION TO DISMISS**
**SECOND AMENDED COMPLAINT BY DEFENDANT SYMANTEC**

1   Haldane Declarations do not demonstrate the existence of any contract that provides

2   that a customer opting to upgrade would still be automatically renewed.  This

3   omission is fatal to Symantec's motion, because, in order for the Court to find an

4   express agreement that defeats an unjust enrichment claim, the alleged agreement

5   must cover the *particular* subject matter in dispute.  *See, e.g., Shum v. Intel Corp.*,

6   2008 WL 4414722, *11 (N.D.Cal. Sept. 28, 2008) (contract that permits either

7   party to exploit intellectual property does not cover the subject matter of method

8   that party employs to do so); *Tomlinson Black North Idaho v. Kirk-Hughes*, 2009

9   WL 4875338, *1, C.A.9 (Idaho), November 13, 2009 (an award for unjust

10  enrichment may be proper where agreement exists, if agreement not applicable to

11  disputed subject, applying Idaho law that unjust enrichment may not lie where

12  express agreement covers subject matter)..  In addition, to demonstrate that an

13  express contract that would support the dismissal of the unjust enrichment claim,

14  Symantec would have to present the relevant express language and also

15  demonstrate that its interpretation of that express language is the only reasonable

16  one. <u>Yang v. Dar Al-Handash Consultants</u>, 250 Fed. Appx. 771, 773 (9th Cir.

17  2007).  Symantec has not done so.[2]

18      The analogous case of *Nordberg v. Trilegiant Corp.*. , 445 F.Supp.2d 1082,

19  1100 (N.D.Ca. 2006) (MHP), supports the propriety of the Plaintiff's unjust

20  enrichment cause of action. In *Nordberg,* plaintiffs alleged that they had been

21  unwittingly automatically enrolled in a periodic discount shopping club for a fee,

22  after a free trial membership period had ended. *Id*. at 1088.   That "free"

23  membership had also been solicited via internet "pop-up" advertisements.  *Id*.  This

24  Court allowed the *Nordberg* plaintiffs' unjust enrichment claim to go forward,

_____

[2] Symantec suggests in a footnote in its brief that it does not have adequate notice of the fact basis for Unjust Enrichment claim.  The basis is the same one that the Court found supported the Unjust Enrichment claim in its Order.  Symantec's suggestion is further belied by the fact that its second rule 12(b)(6) motion is based upon the purported existence of a new factual predicate for all of the claims.  It cannot very well say in a footnote that it does not know what that predicate is, but it knows it is new.

1   holding that "courts finding that California does not allow an 'unjust enrichment'

2   cause of action have made essentially semantic arguments focusing on the

3   interrelationship between the legal doctrine of unjust enrichment and the legal

4   remedy of restitution." *Id.* at 1100 (internal citations omitted).  Here, just as in

5   *Nordberg*, Plaintiff's unjust enrichment claim seeks a restitutionary remedy, and

6   thus, should go forward.  *See* Order at 19.

7        **F.    Plaintiff's Previously Sustained Money Had and Received Claim**

8             **Should Be Sustained Again**

9        Symantec argues that this cause of action cannot survive, "[b]ecause

10   Marolda's claim for money had and received is based on her defective UCL and

11   breach of implied contract claims."  Defendant's Mem. at 23.  Both of those claims

12   were sustained previously, along with the money had and received count, and

13   should be again.  Symantec again does not state what it is about the allegedly new

14   factual predicate that calls for the Court to revisit its decision.  Finally, the law that

15   Symantec now offers to justify dismissal of this count is distinguishable.

16        In *McBride v. Boughtan*, 123 Cal. App. 4th 379, 382, 20 Cal. Rptr. 3d 115

17   (Cal. Ct. App. 2004), the court held, for purely policy reasons, that an unmarried

18   man who expended funds to support a child in the mistaken belief that the child was

19   his may not sue the mother for return of those funds even if his paternity is

20   disproven.  *Id.*  The basis for the denial of this remedy to the plaintiff under the

21   claim of money had and received, was that "[t]he potential emotional and psychic

22   costs to the child of such a rupture are for more significant than any financial injury

23   a grown man might suffer from mistakenly supporting another man's child for a

24   temporary period."  Id. at 390.  Those policy concerns do not apply in this case.

25        G.    **Plaintiff's Previously Sustained Declaratory Judgment**

26             **Claim Should Be Sustained Again**

27        Plaintiff's previously sustained declaratory judgment claim should be

28   sustained for the same reasons that her previously sustained UCL, breach of implied

**PLAINTIFF MAROLDA'S OPPOSITION TO MOTION TO DISMISS**
**SECOND AMENDED COMPLAINT BY DEFENDANT SYMANTEC**

1  contract, unjust enrichment and money had and received claims should be sustained
2  again.  As Symantec concedes, with the survival of one or all of these claims, the
3  declaratory judgment claim survives as well.  *See* Defendant's Mem. at 21, 23.
4       In *Nordberg,* 445 F.Supp.2d at 1101, this Court allowed a declaratory
5  judgment cause of action to proceed on similar facts. The Court certainly has the
6  authority to do so.  "Pursuant to section 2201, any court "*may* declare the rights and
7  other legal relations of any interested party seeking such declaration, whether *or not*
8  *further relief is or could be sought*."  *Id.,* citing 28 U.S.C. § 2201(a) (emphasis in
9  original).

10  **IV.    CONCLUSION**

11       For the foregoing reasons, Defendant's motion to dismiss should be denied in
12  its entirety.

13

14  Dated:  January 4, 2010          LAW OFFICES OF THOMAS M. MULLANEY

15                                   LARRY D. DRURY, LTD.

16                                   BROWNE WOODS GEORGE LLP

17

18                                   By: _____/s/Thomas M. Mullaney_____
                                           Thomas M. Mullaney
19                                         mulllaw@msn.com

20                                   Attorneys for Plaintiff Diane Marolda,
                                     Individually and On Behalf of All Others
21                                   Similarly Situated

22

23

24

25

26

27

28

**PLAINTIFF MAROLDA'S OPPOSITION TO MOTION TO DISMISS**
**SECOND AMENDED COMPLAINT BY DEFENDANT SYMANTEC**

1

**PROOF OF SERVICE**

2

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

3

        I am employed in the County of Los Angeles, State of California.  I am over
the age of 18 and not a party to the within action; my business address is 2121

4

Avenue of the Stars, Suite 2400, Los Angeles, CA 90067.

5

        On January 4, 2010, I served the foregoing document described as:  **[TITLE]**
on the parties in this action by serving:

6

7

SEE THE ATTACHED SERVICE LIST

8

**X      By serving** ¨__/ the original   **_X_**/a true copy thereof enclosed in sealed
envelopes addressed as above and delivering such envelopes as follows::

9

¨       **By Mail**:  As follows:  I am "readily familiar" with this firm's practice of

10

collection and processing correspondence for mailing.  Under that practice it would
be deposited with the U.S. postal service on that same day with postage thereon
fully prepaid at Los Angeles, California in the ordinary course of business.  I am

11

aware that on motion of the party served, service is presumed invalid if postal
cancellation date or postage meter date is more than one day after date of deposit

12

for mailing in affidavit.

13

¨       **By Federal Express**:  I caused the envelope(s) to be delivered to the Federal
Express box at 2121 Avenue of the Stars, California 90067, on _____,

14

for delivery on the next-business-day basis to the offices of the addressee(s).

15

¨       **By Facsimile Transmission**:  On _____ at _____ _.m., I caused

16

the above-named document to be transmitted by facsimile transmission, from fax
number 310-275-5697, to the offices of the addressee(s) at the facsimile number(s)

17

so indicated above.  The transmission was reported as complete and without error.
A copy of the transmission report properly issued by the transmitting facsimile

18

machine is attached hereto.

19

**X      By E-Mail Electronic Transmission**:  Based on a court order or an
agreement of the parties to accept service by e-mail or electronic transmission, I

20

caused the documents to be sent to the person(s) at the e-mail address(es) so
indicated above.  I did not receive, within a reasonable time after the transmission,
any electronic message or other indication that the transmission was unsuccessful.

21

22

        Executed on January 4, 2010, at Los Angeles, California.

23

**X      FEDERAL**  I declare that I am employed in the office of a member of the
bar of this court at whose direction the service was made.

24

25

/s/ KH_____
                    Kathy Hall

26

27

28

**PLAINTIFF MAROLDA'S OPPOSITION TO MOTION TO DISMISS
SECOND AMENDED COMPLAINT BY DEFENDANT SYMANTEC**

1

## SERVICE LIST

2

Counsel for Defendant Symantec Corporation:

| | |
|---|---|
| Bruce A. Colbath<br>Weil Gotshal & Manges, LLP<br>767 Fifth Avenue<br>New York, New York 10153<br>Tel 212.310.8000 – Fax 212.310.8590<br>Email: bruce.colbath@weil.com | Leslie Liu<br>Weil, Gotshal & Manges, LLP<br>201 Redwood Shores Parkway<br>Redwood Shores, California 94065<br>Tel 650.802.3937 – Fax 650.802.3100<br>Email:  leslie.liu@weil.com |
| Richard A. Rothman<br>Weil, Gotshal & Manges, LLP<br>767 Fifth Avenue<br>New York, New York 10153<br>Tel 212.310.8426 – Fax 212.310.8007<br>Email: Richard.rothman@weil.com | Sarah Elizabeth Barrows<br>Weil, Gotshal & Manges LLP<br>201 Redwood Shores Parkway<br>Redwood Shores, California 94065<br>Tel 650.802.3000 – Fax 650.802.3100<br>Email: sarah.barrows@weil.com |

Co-Counsel for Plaintiff:

| | |
|---|---|
| Thomas M. Mullaney<br>Law Offices of Thomas M. Mullaney<br>708 Third Avenue, Suite 2500<br>New York, New York 10017<br>Tel 212.223.0800 –<br>Email:  mulllaw@msn.com | Larry D. Drury<br>Larry D. Drury, Ltd.<br>205 West Randolph Street, Suite 1430<br>Chicago, Illinois 60606<br>Tel. 312.346.7950 – Fax 312.346.5777<br>Email:  ldrurylaw@aol.com |
| Lee A. Weiss<br>Browne Woods George LLP<br>49 W. 47th Street, 15th Floor<br>New York, New York 10018<br>Tel. 212.354.4901 / Fax 212.354.4904<br>Email:  lweiss@bwgfirm.com | |

**PLAINTIFF MAROLDA'S OPPOSITION TO MOTION TO DISMISS
SECOND AMENDED COMPLAINT BY DEFENDANT SYMANTEC**