1 | LAW OFFICES OF
THOMAS M. MULLANEY

2 | Thomas M. Mullaney
(admitted *pro hac vice*)

3 | mulllaw@msn.com
275 Madison Avenue, Suite 3700

4 | New York, New York 10016
Tel 212.223.0800 - Fax 212.661.9860

5

6 | BROWNE GEORGE ROSS LLP
Eric M. George (SBN 166403)
egeorge@bgrfirm.com

7 | 2121 Avenue of the Stars, Suite 2400
Los Angeles, California 90067

8 | Tel (310) 274-7100 - Fax (310) 275-5697

9 | Attorneys for Plaintiff Diane Marolda,
Individually and On Behalf of All Others

10 | Similarly Situated

11 | WEIL, GOTSHAL & MANGES LLP
Richard A. Rothman (pro hac vice)

12 | Richard.rothman@weil.com
Bruce A. Colbath (pro hac vice)

13 | Bruce.Colbath@weil.com
Adam B. Banks

14 | Adam.banks@weil.com
767 Fifth Avenue

15 | New York, New York 10153
Tel (212) 310-8000 – Fax (212) 310-8007

16

17 | Attorneys for Defendant Symantec Corporation

LARRY D. DRURY, LTD.
Larry D. Drury
ldrurylaw@aol.com
100 North LaSalle Street, Suite 1010
Chicago, Illinois 60602
Tel 312.346.7950 – Fax 312.346.5777

18 | UNITED STATES DISTRICT COURT

19 | NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

20 | DIANE MAROLDA, Individually and on behalf of All Others Similarly Situated,

21 | Plaintiff,

22 | vs.

23 | SYMANTEC CORPORATION,

24 | Defendant.

25

26

27

28

Case No. 08-cv-05701 EMC
The Hon. Edward M. Chen

**NOTICE OF MOTION AND JOINT MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Judge:  Hon. Edward M. Chen
Date:   April 4, 2013
Time:   1:30 p.m.
Crtrm.: 5, 17th Floor

Trial Date:  None Set

# **TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ................................................................................. 1

II.    SUMMARY OF THE CASE.................................................................. 1

III.   SUMMARY OF THE PROPOSED SETTLEMENT................................ 4

    A.    Settlement Negotiations.................................................................. 4

    B.    The Settlement Class ...................................................................... 4

    C.    The Settlement Terms and Benefits................................................. 5

        1.    Injunctive/Equitable Relief.................................................... 5

        2.    Consideration to Settlement Class Members........................... 7

    D.    Attorney's Fees .............................................................................. 8

    E.    Adequacy of Class Notice under Rule 23 ........................................ 8

    F.    Reaction by Class Members to the Settlement ................................. 9

IV.    THE PROPOSED SETTLEMENT MERITS FINAL APPROVAL........ 10

    A.    Balancing of Factors .................................................................... 12

        1.    Litigation Poses Substantial Risk In Establishing Liability And Damages, Would be Complex, and of Significant Duration ............. 12

        2.    The Certainty of An Immediate Recovery Balanced Against The Expenses And Likely Duration of Trial Favors Settlement ........ 14

        3.    The Injunctive and Economic Benefits to the Class Favors Settlement ........................................................................... 15

        4.    The Parties Have Engaged In Sufficient Investigation, Discovery and Proceedings To Identify The Strengths and Weakness of Their Cases........................................................ 17

        5.    The Recommendations of Experienced Counsel Heavily Favor Approval of The Settlement .................................................. 18

        6.    Reaction Of The Class Supports Approval of The Settlement........... 18

        7.    Compliance with the Class Action Fairness Act ................. 19

1

# **TABLE OF AUTHORITIES**

2
**Page**

3

## FEDERAL CASES

4

5
*Boyd v. Bechtel Corp.,*
    485 F. Supp. 610 (N.D. Cal. 1979) .................................................................. 11, 17

6
*Church v. Consolidated Freightways, Inc.,*
    [1993 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶97,743 (N.D. Cal. 1993) ........... 11

7
*Churchill Vill. LLC v. Gen. Elec.,*
    361 F.3d 566 (9th Cir. 2004) ....................................................................... 10, 14

8

9
*Class Plaintiffs v. Seattle,*
    955 F.2d 1268 (9th Cir. 1992) ............................................................................ 11

10
*Ellis v. Naval Air Rework Facility,*
    87 F.R.D. 15 (N.D. Cal. 1980), *aff'd,* 661 F.2d 939 (9th Cir. 1981) ................. passim

11

12
*Girsh v. Jepson,*
    521 F.2d 153 (3d Cir. 1975) .............................................................................. 14

13
*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9th Cir. 1998) ...................................................................... 17, 18

14

15
*In re Art Materials Antitrust Litig.,*
    100 F.R.D. 367 (N.D.Ohio 1983) ....................................................................... 18

16
*In re Warner Communications Sec. Litig.,*
    618 F. Supp. 735, 741 (S.D.N.Y. 1985), *aff'd,* 798 F.2d 35 (2d Cir. 1986) ....... 15, 17

17

18
*In re Washington Pub. Power Supply Sys. Sec. Litig.,*
    720 F. Supp. 1379 (D. Ariz. 1989) ..................................................................... 11

19
*Ko v. Natura Pet Prods., Inc.,*
    2012 WL 3945541 (N.D. Cal. 2012) ........................................................ 11, 15, 18

20

21
*Malchman v. Davis,*
    761 F.2d 893 (2d Cir. 1985) .............................................................................. 12

22
*Mazza v. Am. Honda Motor Co.*
    666 F.3d 581 (9th Cir. 2012) ........................................................................ 12, 13

23

24
*Milstein v. Huck,*
    600 F. Supp. 254 (E.D.N.Y. 1984) ..................................................................... 12

25
*MWS Wire Indus., Inc. v. California Fine Wire Co.,*
    797 F.2d 799 (9th Cir. 1986) ............................................................................ 10

26

27
*Myers v. MedQuist, Inc.,*
    No. 05-4608, 2009 U.S. Dist. LEXIS 27908 (D.N.J. Mar. 31, 2009) ..................... 13

28

*Officers for Justice v. Civil Serv. Comm'n,*
    688 F.2d 615 (9th Cir. 1982) ................................................................ 10, 11, 16

*Radosti v. Envision Emi, LLC,*
    717 F. Supp. 2d 37 (D.D.C. 2010) ................................................................ 13

*Rodriguez v. West Publ'g Corp.,*
    563 F.3d 948 (9th Cir. 2009) ................................................................ 11, 19

*Torrisi v. Tucson Elec. Power Co.,*
    8 F.3d 1370 (9th Cir. 1993) ................................................................ 11

*Utility Reform Project v. Bonneville Power Admin.,*
    869 F.2d 437 (9th Cir. 1989) ................................................................ 10

*Van Bronkhorst v. Safeco Corp.,*
    529 F.2d 943 (9th Cir. 1976) ................................................................ 10

*Weinberger v. Kendrick,*
    698 F.2d 61 (2d Cir. 1982) ................................................................ 17, 18

*Williams v. First Nat'l Bank,*
    216 U.S. 582 (1910) ................................................................ 10

*Young v. Katz,*
    447 F.2d 431 (5th Cir. 1971) ................................................................ 14


## STATE CASES

*Chavez v. Netflix, Inc.,*
    162 Cal.App.4th 43, 75 Cal.Rptr.3d 413 (Court of Appeal, First District,
    2008) ................................................................ 19


## FEDERAL STATUTES

Class Action Fairness Act ("CAFA"),
    28 U.S.C. § 1715 ................................................................ 19

28 U.S.C. § 1715(b) ................................................................ 20

Federal Rules of Civil Procedure, Rule 12(b)(6) ................................................................ 2, 3

Federal Rules of Civil Procedure, Rule 23 ................................................................ 1, 8, 10

Federal Rules of Civil Procedure, Rule 23(e) ................................................................ 1, 10

NOTICE OF MOTION AND JOINT MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1

2  **STATE STATUTES**

3  California Business & Professions Code §§ 17500 et seq.......................................................2

4  California Business & Professions Code §§ 17200 et seq..................................................2, 3

5  California Civil Code § 1542 ................................................................................................8

6  California Civil Code §§ 1750 et seq....................................................................................2

7

8  **OTHER AUTHORITIES**

9  *Manual for Complex Litigation, Third* §30.42 (1995).......................................................12

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

By this motion, and pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Plaintiff Diane Marolda ("Plaintiff") and Defendant Symantec Corporation ("Defendant") seek final approval of this proposed class action Settlement on behalf of a nationwide class of consumers that would resolve claims regarding Defendant's automatic renewal feature offered by Defendant to customers of its anti-virus and other products.

The parties' motion for final settlement approval is to be presented at a Fairness Hearing currently scheduled by the Court for April 4, 2013 and, to that end, by this motion they request final certification of the Settlement Class (as defined below), final approval of the proposed Settlement Agreement, appointment of Plaintiff's counsel as Class Counsel and Plaintiff as representative of the Settlement Class, and (by separate, contemporaneous motion) approval of Plaintiff's motion for an award to Plaintiff's counsel for her attorneys' fees and costs and an award to Plaintiff for her service in this action.

## II.    SUMMARY OF THE CASE

This action concerns certain of Defendant's computer antivirus and other products (Norton AntiVirus, Norton Internet Security, Norton 360, Norton Personal Firewall and Norton SystemWorks) (the "Products") and the automatic renewal and upgrade programs offered by Defendant in connection with those products. If enrolled, Defendant's automatic renewal program is designed to automatically renew consumers' subscriptions to the Products when those subscriptions are set to expire. In addition to this automatic renewal program, Plaintiff contends that Defendant implemented a program whereby existing subscribers to the Products were offered an opportunity to upgrade their then-existing subscriptions to one of the Products that included features different from or additional to those in the Products to which they had previously subscribed. Plaintiff contends that with respect to customers who chose to purchase an upgraded subscription pursuant to the upgrade program, the automatic renewal feature of their existing subscriptions was not automatically terminated. Rather, Plaintiff alleges that, unless a

NOTICE OF MOTION AND JOINT MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

customer took additional action to cancel the automatic renewal of his or her existing product when s/he was notified of the upcoming renewal (or otherwise) that customer was charged both the automatic renewal fee and the subscription price for the upgraded product.

Plaintiff alleges that Defendant's upgrade offers failed to disclose and concealed the fact that customers needed to take additional action to prevent the automatic renewal of their or her existing subscriptions even after upgrading those subscriptions pursuant to an upgrade offer. Plaintiff also alleges that Defendant's statements in the upgrade offers implicitly obligated Defendant terminate the customers' existing automatically renewing subscription when a customer purchased an upgrade. Thus, according to Plaintiff, it was improper for Defendant to charge customers to automatically renew their previous subscriptions after those customers paid to purchase upgrades to those subscriptions.

Plaintiff Diane Marolda filed her complaint in this Court on December 19, 2008 captioned *Diane Marolda, individually and on behalf of All Others Similarly Situated v. Symantec Corporation*, USDC Case No. 08-cv-05701 EMC ("*Marolda*"). Docket No. 1. In that initial complaint, Plaintiff asserted claims for violations of California Business and Professions Code §§ 17200 et seq. ("UCL") and Civil Code §§ 1750 et seq. (Consumers Legal Remedies Act or "CLRA"). *Id.* Plaintiff filed a First Amended Complaint on April 20, 2009 to assert additional claims for violations of Cal. Bus. & Prof. Code §§ 17500 et seq. ("FAL"), breach of express and/or implied contract, breach of covenant of good faith and fair dealing, money had and received, unjust enrichment and declaratory relief. Docket No. 32.

Defendant moved to dismiss the First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Docket No. 36. After briefing and oral argument, the Court dismissed certain of Plaintiff's claims, but sustained Plaintiff's claim under the "unfair" prong of the UCL based upon Plaintiff's assertions that Defendant's conduct systematically breached its implied contracts with customers. Docket No. 48. That order also sustained Plaintiff's breach of implied contract, breach of covenant of good faith and

1  fair dealing, money had and received, unjust enrichment and declaratory relief claims. *Id.*

2       On September 25, 2009, Plaintiff filed a Second Amended Complaint. Docket No.

3  51. Based upon the facts summarized above, Plaintiff's Second Amended Complaint

4  asserted claims for unlawful, unfair and fraudulent conduct pursuant to Cal. Bus. & Prof.

5  Code §§ 17200 et seq., breach of implied contract, money had and received, unjust

6  enrichment and declaratory relief. *Id.* Defendant again moved to dismiss pursuant to

7  Federal Rule of Civil Procedure 12(b)(6). Docket No. 58. In its March 12, 2010 Order on

8  that motion, the Court sustained Plaintiff's claim under the unfairness prong of the UCL,

9  as well as Plaintiff's breach of implied contract, money had and received, unjust

10  enrichment and declaratory relief claims. Docket No. 75.

11       As reflected in its dismissal motions, Defendant believes that the nature and terms

12  of its automatic renewal program were completely disclosed to its customers in numerous

13  transactional communications. For example, Defendant disclosed the terms of its

14  automatic renewal program on the "Shopping Cart" page displayed to Plaintiff at the time

15  of her original purchase and enrollment in the automatic renewal program. *See* Docket No.

16  58, at 8, 14. The terms were also disclosed in the "Order Summary" (an example of this

17  summary can be found as Exhibit B to Plaintiff's original complaint). The Order

18  Summary explained that Plaintiff was enrolled in the automatic renewal program and

19  advised her that she would be charged for the renewal and that she could cancel at any

20  time. Additionally, Defendant believes that Plaintiff received a Pre-Billing Notification

21  from Defendant that contained similar disclosures, including a disclosure that Plaintiff

22  would be charged for the renewal unless she cancelled automatic renewal, and then

23  explained how she could cancel the renewal. *See* Docket No. 58, at 8-9, 13-14. Defendant

24  believes that its disclosure regime provides valid defenses to each of Plaintiff's substantive

25  claims.

26       Defendant also believes that an express contract was formed through the various

27  transactional documents communicated to Plaintiff during the course of her purchase

28  transactions, which defeats the "implied contract" claim she alleges and all other claims

1 | that are derivative of that claim.  Accordingly, Defendant believes there are several

2 | insuperable legal and factual bars to Plaintiff's claims.

3 | Defendant answered the Second Amended Complaint on March 26, 2010.  Docket

4 | No. 76.  In its answer, Defendant denied Plaintiff's material allegations and asserted

5 | affirmative defenses to Plaintiff's claims.  The parties thereafter began exploring a possible

6 | settlement of the matter, and reached a settlement in principle with the execution of a

7 | Memorandum of Understanding on November 2, 2011.  This Court entered an Order

8 | granting the parties' Joint Motion for Preliminary Approval of Settlement on September

9 | 17, 2012.  Docket No. 109.

10 | **III.    SUMMARY OF THE PROPOSED SETTLEMENT**

11 | **A.    Settlement Negotiations**

12 | Since May 2010, the Parties have engaged in extensive settlement negotiations.  At

13 | all times, the Parties' negotiations were adversarial, non-collusive, and at arms' length.  As

14 | a result of those settlement negotiations, the parties entered into a non-binding

15 | Memorandum of Understanding, which is now embodied in the Settlement Agreement

16 | reached between the Parties.  Declaration of Thomas M. Mullaney ("Mullaney Decl.") ¶ 2.

17 | The Memorandum of Understanding contained provisions affording Plaintiff's counsel the

18 | opportunity to conduct confirmatory discovery to allow them to confirm the adequacy of

19 | the Settlement.  Accordingly, Plaintiffs issued and Defendant responded to written

20 | discovery.  *Id.* ¶ 3.  Plaintiff also deposed a representative of Defendant most familiar with

21 | the automatic renewal and upgrade programs, the information disseminated to customers

22 | regarding those programs and the methods available to identify customers who purchased

23 | upgraded subscriptions but were also charged to automatically renew their existing

24 | subscriptions.  *Id.*

25 | **B.    The Settlement Class**

26 | The Settlement resolves claims assertedly held by Defendant's customers who,

27 | within the Class Period (notably, broader than the class period claimed in the Second

28 | Amended Complaint), were charged to automatically renew a subscription to Norton

1 | AntiVirus, Norton Internet Security, Norton 360, Norton Personal Firewall or Norton

2 | SystemWorks (the "Eligible Products"), despite having paid to upgrade from one of those

3 | Eligible Products to another of those Eligible Products.  The "Eligible Products"

4 | encompassed in the Settlement Agreement is broader in scope than the single product

5 | complained of by Plaintiff in the Second Amended Complaint.

6 |       To that end, the Proposed Settlement Class requested to be certified pursuant to the

7 | Settlement Agreement is broader than that which could be certified by contested motion,

8 | and consists of all Persons throughout the United States from October 1, 2005 through

9 | May 23, 2012 who entered into an Eligible Transaction by 1) purchasing a subscription to

10 | an Eligible Product and enrolling in Symantec's automatic renewal service for that product

11 | subscription and, 2) purchasing (or renewing), either during the term of that subscription or

12 | within 60 days after an automatic renewal of that Eligible Product was charged to them by

13 | Symantec or its agent(s), a second Eligible Product which was installed on the same

14 | computer, and were charged for both the automatic renewal of the initial software product

15 | subscription and the second Eligible Product subscription, and did not receive a refund for

16 | the automatic renewal charge(s) for the initial Eligible Product purchased.

17 |       Excluded from the Settlement Class are:  the Defendant, its predecessors,

18 | successors, and its current and former directors, officers, employees, agents, attorneys,

19 | representatives, affiliates, associates, consultants, advisers, parents and subsidiaries; and

20 | Persons who have purchased the product for resale, and any Person who has validly

21 | elected to exclude themselves from the Settlement Class.  All members of the Settlement

22 | Class are referred to herein as "Settlement Class Members."

23 |      **C.**    **The Settlement Terms and Benefits**

24 |              **1.**    **Injunctive/Equitable Relief**

25 |       The Settlement provides for significant injunctive and equitable relief that directly

26 | and comprehensively addresses Plaintiff's allegations in this action.  Defendant has agreed

27 | to add an additional disclosure on its website (www.Norton.com) concerning its automatic-

28 | renewal feature.  This disclosure is designed to minimize any potential customer confusion

1 concerning continued renewals in the event the customer upgrades to new software.

2      Specifically, the Settlement also requires Defendant to make the following

3 conspicuous disclosure on the "Upgrades and Renewals" page of its web site, which is a

4 page subscribers visit to upgrade an existing Eligible Product to a higher level product,

5 whether in response to an alleged email solicitation or not:

> **IMPORTANT:** Purchases of Norton subscription products from the Norton online store include enrollment in the Norton Automatic Renewal Service, unless you choose to cancel the service. If you are replacing an existing Norton product subscription, please make sure the existing subscription is NOT enrolled in the Norton Automatic Renewal Service. If you remain enrolled, your existing Norton product subscription will automatically renew prior to expiration. We will send you an email notification shortly before you are billed for the automatic renewal.
>
> You can confirm your Norton Automatic Renewal Service status by logging in to your Norton Account at www.myNortonAccount.com and clicking the Automatic Renewal link at the top of the page. To turn off Automatic Renewal, uncheck the box next to the corresponding Norton product subscription and click the "update" button. If you do not find the Automatic Renewal link at the top of the page in your Norton Account (to the immediate right of the "Profile" link), then your existing product subscription is not enrolled in the Norton Automatic Renewal Service.

Consistent with and as a result of the Settlement, Defendant has already posted this notice on its website beginning in November 2011, and has maintained the notice since then. Pursuant to the Settlement, that disclosure must be maintained on Defendant's website (www.norton.com) for so long as it is not inconsistent with Defendant's planned business practices. To the extent that Defendant intends to modify its business practices so that the practices, if implemented, would be inconsistent with this disclosure, counsel for the Parties are to meet and confer in an attempt to modify the disclosure to be consistent with Defendant's modified practices.

     Defendant has also agreed to implement a new business practice designed to eliminate the possibility of a customer accidentally being charged for automatically renewing a software subscription when upgrading from it. Under the terms of the Settlement, in the event Defendant in the future solicits customers by email or other personal communication to upgrade an existing subscription to one of Defendant's

products, when any customer purchases an upgrade pursuant to the solicitation, Defendant will cancel any automatic renewal program applicable to the original subscription and instead enroll the customer in the automatic renewal program for the upgraded subscription purchased pursuant to the solicitation.

Circumstances in which an inadvertent technical malfunction impairs this promotion, for example, if customers' automatic renewal service enrollments are not cancelled because of an inadvertent technical malfunction, shall not constitute a breach of this section. However, any automatic renewal customer affected by such malfunction shall be entitled to a refund of an automatic renewal charge for sixty (60) days upon request to Symantec.

## 2.   Consideration to Settlement Class Members

Under the Settlement, Defendant will also provide the following consideration to Settlement Class Members who submit valid claims:

1.   Current Subscribers to a Symantec software product who do not submit valid proofs of purchase shall have the option to elect to receive either: one (1) two-month extension to their existing software license or one (1) ten-dollar ($10.00) cash refund, regardless of the number of Eligible Transactions they may have made.

2.   Current Subscribers to a Symantec software product who submit valid proofs of purchase for the Eligible Transaction(s) for which they are claiming settlement benefits shall have the option to elect, for each Eligible Transaction supported by valid proof of purchase information, either: one (1) two-month extension to their existing software license or a ten-dollar ($10.00) cash refund.

3.   If any Settlement Class Member electing to receive the subscription extension does not have a current subscription to the Symantec Product designated for the extension(s), the Settlement class member shall receive a ten-dollar ($10.00) cash refund for each Eligible Transaction for which they are entitled to relief under the Settlement Agreement.

Under the Settlement, Defendant will also provide the following compensation to former subscribers of any of the Eligible Products who submit valid claims:

1.   Former Subscribers to a Symantec software product who do not submit valid proofs of purchase shall receive one (1) ten-dollar ($10.00) cash refund regardless of the number of Eligible Transactions they may have made.

2.   Former Subscribers to a Symantec software product who submit valid proofs of purchase for the Eligible Transaction(s) for which they are claiming

1  settlement benefits shall receive a ten-dollar ($10.00) cash refund for each Eligible
2  Transaction supported by valid proof of purchase information.

3      Upon the Effective Date of Settlement, as defined in the Settlement Agreement, the
4  Settlement Class will have released the "Released Parties" from the "Released Claims," as
5  those terms are defined in the Settlement Agreement, including a waiver of Civil Code §
6  1542. Settlement Agreement, §13.

7      **D.   Attorney's Fees**

8      Class Counsel negotiated fees only after the Class benefit was negotiated.
9  Mullaney Decl. ¶ 5. Defendant has agreed not to object to an application for a fee award
10  and costs award so long as it is consistent with the provisions of the Settlement Agreement
11  and does not exceed $1,700,000.00. Defendant's payment of Class Counsel's fees is
12  separate from and does not reduce the economic benefits available to the Class. Defendant
13  will also pay for the costs of administering the Settlement, also separate and distinct from
14  the economic benefits available to the Class.

15      Class Counsel are experienced class action attorneys, and they also strongly believe
16  that the Settlement Agreement and Release is fair, reasonable, adequate, and represents
17  significant relief and recovery based on the risks of establishing class certification (and the
18  impossibility of establishing as broad a class by a contested motion) and proving liability
19  and damages at trial on the claims as set forth in Plaintiff's Complaint.

20      Before agreeing to the Settlement, Class Counsel obtained comprehensive
21  knowledge of Defendant's business practices as they relate to the representations and
22  billings concerning all of the Eligible Products. Class Counsel received, examined, and
23  analyzed testimony, information, documents, and materials that they deemed necessary
24  and appropriate to enable them to enter into the Settlement on a fully informed basis.

25      **E.   Adequacy of Class Notice under Rule 23**

26      Complete details of the notice program are set forth in the Affidavit of Cameron R.
27  Azari, Esq. on Implementation and Adequacy of Notice Plan and Notices ("Azari Aff.").
28  Defendant lacks customer records that would allow it to precisely identify or otherwise

1  quantify the number of customers that comprise the proposed Settlement Class. Defendant

2  undertook to research its customer licensing databases to identify customers having

3  purchase transaction activity consistent with the Settlement Class definition, so as to

4  provide direct notice to such consumers, which would likely include members of the

5  proposed Settlement Class. In addition, Defendant reviewed its customer support records

6  for customers who contacted Defendant regarding an automatic renewal charge under

7  circumstances similar to those of Plaintiff. As result of these efforts by Defendant,

8  individual notice was provided to 4,224,719 customers. Azari Aff. ¶¶ 11, 38. Further, as

9  described in the Azari Affidavit in greater detail, Defendant undertook a comprehensive

10 campaign of publication notice designed to reach individuals and entities who may be

11 potential Settlement Class Members. Azari Aff. ¶¶ 20-30. In the opinion of Mr. Azari, the

12 notice program designed by Hilsoft Communications and implemented in accordance with

13 the Notice Plan "was the best notice practicable under the circumstances of this case,

14 conformed to all aspects of Federal Rule of Civil Procedure 23, and comported with the

15 guidance for effective notice articulated in the Manual for Complex Litigation, 4th." Azari

16 Aff. ¶ 40. Pursuant to the Settlement Agreement, the considerable costs of notice (and the

17 costs of settlement administration) are to be borne entirely by Defendant.

18      **F.**    **Reaction by Class Members to the Settlement**

19      The reaction of Class members to the Settlement Agreement has been extremely

20 positive. Specifically, the Claims Administrator, Epiq Class Action and Claim Solutions

21 (hereinafter "Epiq"), has received a total of 115,808 timely claims as of February 1, 2013.

22 Azari Aff. ¶ 32. As noted above, because the actual size of the Settlement Class cannot be

23 determined with precise accuracy, it is not possible to estimate the actual "take rate"

24 achieved by the Settlement.

25      Given the injunctive relief and economic value of the proposed Settlement, the

26 difficult issue of the certification of a nationwide-class in a contested motion, the

27 significantly greater size of the Settlement Class than the class pled in the Second

28 Amended Complaint, the disputed issues of liability and damages, and the positive reaction

1   of the Class, the proposed Settlement represents an outstanding result achieved by Class

2   Counsel and merits final approval.  For the reasons addressed below, Plaintiff and Class

3   Counsel and Defendant's counsel respectfully request that this Court grant this motion for

4   *final* approval of the Settlement and for an Order and entry of Judgment approving the

5   Settlement on behalf of the Class against Defendant.

6   **IV.    THE PROPOSED SETTLEMENT MERITS FINAL APPROVAL**

7           It is established in the Ninth Circuit that a "voluntary conciliation and settlement are

8   the preferred means of dispute resolution." *Officers for Justice v. Civil Serv. Comm'n,* 688

9   F.2d 615, 625 (9th Cir. 1982).  It is beyond question that "there is an overriding public

10  interest in settling and quieting litigation," and this is "particularly true in class action

11  suits." *Van Bronkhorst v. Safeco Corp.,* 529 F.2d 943, 950 (9th Cir. 1976) (footnote

12  omitted); *see also Utility Reform Project v. Bonneville Power Admin.,* 869 F.2d 437,443

13  (9th Cir. 1989).  In deciding whether to approve a proposed settlement under Fed. R. Civ.

14  P. 23(e), the Court must find that the proposed settlement is "fair, adequate and

15  reasonable."[1] As the Ninth Circuit has noted:

16          Although Rule 23(e) is silent respecting the standard by which a proposed
            settlement is to be evaluated, the universally applied standard is whether the
17          Settlement is fundamentally fair, adequate and reasonable. The district court's
            ultimate determination will necessarily involve a balancing of several factors which
18          may include, among others, some or all of the following: the strength of plaintiffs'
            case; the risk of maintaining class action status throughout the trial; the amount
19          offered in settlement; the extent of discovery completed, and the stage of the
20          proceedings; the experience and view of counsel; the presence of a governmental
            participant; and the reaction of the class members to the proposed settlement.
21

22  *Officers for Justice,* 688 F.2d at 625.  *Accord Churchill Vill. LLC v. Gen. Elec.,* 361 F.3d

23  566, 575 (9th Cir. 2004); *see also Church v. Consolidated Freightways, Inc.,* [1993

24

25  _____
    [1]   The law favors the compromise of disputed claims in general, *Williams v. First Nat'l*
26  *Bank,* 216 U.S. 582 (1910); *MWS Wire Indus., Inc. v. California Fine Wire Co.,* 797 F.2d
    799, 802 (9th Cir. 1986), including those asserted in stockholder class actions. *Weinberger*
27  *v. Kendrick,* 698 F.2d 61, 73 (2d Cir. 1982).

28

1    Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶97,743 (N.D. Cal. 1993); *In re Washington*

2    *Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379 (D. Ariz. 1989), *aff'd sub nom.,*

3    *Class Plaintiffs v. Seattle*, 955 F.2d 1268 (9th Cir. 1992). "This list is not exhaustive, and

4    different factors may predominate in different factual contexts." *Torrisi v. Tucson Elec.*

5    *Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993).

6        The district court must exercise "sound discretion" in approving a settlement. *Ellis*

7    *v. Naval Air Rework Facility,* 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd,* 661 F.2d 939 (9th

8    Cir. 1981); *Torrisi,* 8 F.3d at 1375. This discretion is exercised by reaching a "reasoned

9    judgment that the agreement is not the product of fraud or collusion between the parties,

10   and that the settlement is fair as a whole. *Ko v. Natura Pet Prods., Inc.*, 2012 WL 3945541

11   (N.D. Cal. 2012), *3, *citing Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir.

12   2009). As the Ninth Circuit put it, "[t]he court's intrusion upon what is otherwise a private

13   consensual agreement negotiated between the parties to a lawsuit must be limited to the

14   extent necessary to reach a reasoned judgment that the agreement is not the product of

15   fraud or overreaching by, or collusion between, the negotiating parties, and that the

16   Settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers*

17   *for Justice,* 688 F.2d at 625. The Ninth Circuit defined the inquiry to be made by the

18   Court in the following matter:

19
20
     Therefore, the Settlement or fairness hearing is not to be turned into a trial or
     rehearsal for trial on the merits. Neither the trial court nor this court is to
21
     reach any ultimate conclusions on the contested issues of fact and law which
     underlie the merits of the dispute, for it is the very uncertainty of outcome in
22
     litigation and avoidance of wasteful and expensive litigation that induce
     consensual settlements. The proposed settlement is not to be judged against a
23
     hypothetical or speculative measure of what <u>might</u> have been achieved by
24
     the negotiators.

25   *Id.* (emphasis in original).

26        In addition, "[t]he recommendations of plaintiffs' counsel should be given a

27   presumption of reasonableness." *Boyd v. Bechtel Corp.,* 485 F. Supp. 610, 622 (N.D. Cal.

28   1979). The presumption of reasonableness in this action is fully warranted because the

Settlement is the product of arm's length negotiations conducted by capable counsel who are well-experienced in complex, class action litigation. *Ellis,* 87 F.R.D. at 18 ("the fact that experienced counsel involved in the case approved the Settlement after hard-fought negotiations is entitled to considerable weight"); *Manual for Complex Litigation, Third* §30.42 (1995)[2]. Here, it is the considered judgment of experienced counsel that the Settlement is a fair, reasonable, and adequate settlement of this case. Mullaney Decl. ¶6; Declaration of Eric M. George, dated February 5, 2013. ("George Decl.") ¶¶ 8,9.

In light of the complex and contested factual and legal issues presented in this case, the impossibility of a more favorable economic result after even an entirely successful, and costly and prolonged, trial on the merits and inevitable post-trial motions and appeals, the Settlement warrants this Court's approval.

### A.   Balancing of Factors

#### 1.   Litigation Poses Substantial Risk In Establishing Liability And Damages, Would be Complex, and of Significant Duration

Class Counsel and Plaintiff believe that the claims asserted in this litigation have merit and that the evidence developed to date supports the claims asserted. However, Class Counsel recognize and acknowledge the uncertainty of prevailing on Plaintiff's claims due to the defenses that have been or could be asserted by Defendant were the litigation to go forward, against both class certification and the merits of the claims.

Moreover, the recent decision set forth in *Mazza v. Am. Honda Motor Co.* 666 F.3d 581, 594 (9th Cir. 2012) strongly supports approval of the proposed Settlement, as in that case the Ninth Circuit recently decertified a class action brought under California's Unfair Competition Law on the grounds that the California laws could not be applied to the entire nationwide class under the Court's three-step governmental interest test. *Id.* Here, not only has an otherwise unavailable nationwide class been agreed to in the Settlement, but

---

[2]   *Accord Malchman v. Davis,* 761 F.2d 893, 903 (2d Cir. 1985); *Milstein v. Huck,* 600 F. Supp. 254, 262 (E.D.N.Y. 1984).

1  the class is also temporally broader than one Plaintiff could achieve by certifying the one-

2  year class pled in her Second Amended Complaint by contested motion, and it also covers

3  more Eligible Products than are pled in the Second Amended Complaint.

4        Courts even before *Mazza* have found that the fact that choice of law issues may

5  render a potential class so unmanageable that a recovery would be impossible absent

6  settlement -- which additionally weighs in favor of approval a proposed settlement

7  agreement reached between the parties.[3]  Of course, if class certification were

8  unsuccessful, each Class member would be required to try his or her own case separately --

9  an unlikely outcome given the average cost per annual subscription at issue is about

10  $50.00.  Given the 105 "Opt-outs" from the Settlement, *see* Azari Aff. ¶ 31, the Settlement

11  confers far-greater benefits on the Class than individual litigation.

12        Further considerations supporting the decision to enter into the Settlement were: i)

13  the expense and length of continued proceedings necessary to prosecute the litigation

14  against a well-funded Defendant represented by one of the nation's premier law firms

15  through trial and appeals, ii) the likelihood of necessary, extensive discovery of non-party

16  former eCommerce providers of Symantec, Vindicia, Inc., of Belmont, Ca., and Digital

17  River, Inc., located in Minnetonka, Mn., iii) the difficulty or impossibility of recapturing or

18  recreating certain customer data lost as Symantec, Vindicia, or Digital River has updated

19  various information platforms or migrated to new ones in the normal course of business,

20  iv) the significant time and expense necessarily involved in understanding Symantec

---

21  [3]   *Radosti v. Envision Emi, LLC,* 717 F. Supp. 2d 37, 59-60 (D.D.C. 2010) ("the Court
22  notes that choice-of-law questions may render the class action unmanageable such that no
    class-wide recovery would be possible without a settlement. This factor weighs in favor of
23  approving the parties' agreement."); *Myers v. MedQuist, Inc.,* No. 05-4608, 2009 U.S.
    Dist. LEXIS 27908, at *2 (D.N.J. Mar. 31, 2009) (finding factors to weight in favor of
24  approval of class settlement where choice of law concerns "create a strong risk that such a
    nationwide class would create intractable management problems if it were to become a
25  litigation class, and therefore be decertified," and finding that "while the Court was not
    required to account for such management problems in determining whether to certify a
26  class for settlement only, such factors would indeed be accounted for if this action were to
    proceed to trial, and the risk of decertification of this large nationwide class is not
27  substantial," and therefore, this factor "weighs in favor of approving the proposed
    settlement." (Citations and internal quotation marks omitted).)

28

internal corporate documents, especially those financial or technical in nature, many of which would require explanation by deposition testimony by a Symantec employee, and v) the difficulty in successfully presenting such evidence to a jury. Even if Plaintiff was successful at trial, Defendant would likely have appealed that outcome, given its view that Plaintiff's claims are of defective nature. Therefore, it is respectfully submitted that careful consideration of the above risks further supports approval of the Settlement as fair, adequate, and reasonable. *See* Mullaney Decl. ¶6; George Decl. ¶¶ 8, 9.

### 2.   The Certainty of An Immediate Recovery Balanced Against The Expenses And Likely Duration of Trial Favors Settlement

The immediacy and certainty of a recovery is a factor for the court to balance in determining whether the proposed Settlement is fair, adequate, and reasonable. *E.g., Girsh v. Jepson, 521* F.2d 153, 157 (3d Cir. 1975). The amount of the settlement is of course a factor for the Court to consider in determining whether to finally approve a proposed class action settlement. *E.g., Churchill Vill.*, 361 F.3d at 574. But any Settlement, achieved at any stage, must be balanced against the expense and delay in possibly achieving a larger result at trial, later. *Young v. Katz,* 447 F.2d 431, 433 (5th Cir. 1971). Here, given the far-smaller class -- measured geographically, temporally and by product -- for which Plaintiff could possibly recover even after complete victory at trial, the Settlement almost certainly provides a greater economic and injunctive benefit than totally successful litigation could. *See* Mullaney Decl. ¶6.

Moreover, if not for the Settlement, the case would have continued to be fiercely contested by Defendant. Defendant already brought two motions to dismiss against Plaintiff's Complaint, which were largely successful, and exhibited the intention to continue to litigate vigorously if settlement were not achieved. Defendant is represented by one of the nation's premier law firms, which is held in especially high esteem for its expert litigation of complex, corporate matters.

Future motion practice in this case would undoubtedly be voluminous and complicated in arguments and factual disputes, likely evidenced by dozens of exhibits and

1  hundreds of pages of technical and financial data.  A trial would occupy several attorneys

2  on both sides for many weeks or even months, and would require substantial expert

3  testimony from experts for both the Class and Defendant on issues concerning the

4  propriety of class certification, consumer perception and damages.  While Class Counsel

5  believes that Plaintiff could ultimately prevail on the merits, that success would benefit a

6  much smaller class than the one agreed to in this settlement, and come at a steep price.

7  The accrual of additional and substantial expenses in fact and expert discovery, and a

8  complex trial presentation, would diminish any eventual recovery by the Class, a factor

9  favoring settlement. *See Ko*, 2012 WL 3945541, at *4.

10       Moreover, as noted above a trial judgment favorable to Plaintiff would likely have

11  been challenged through post-trial motions and appeals, which would further prolong this

12  case, and delay recovery. *See, e.g., In re Warner Communications Sec. Litig.*, 618 F. Supp.

13  735, 741 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986) (delay from appeals is a factor

14  to be considered).  Therefore, delay, not just at the trial stage but through post-trial motions

15  and the appellate process as well, could force members of the Class to wait several years

16  more for any recovery, further reducing its benefit by the shrinking time value of the

17  recovery funds.  Accordingly, it is respectfully submitted that pre-trial settlement of this

18  litigation before significant additional resources are expended benefit the Class.

19       **3.    The Injunctive and Economic Benefits to the Class Favors
             Settlement**

20

21       Over 100,000 customers have elected to receive either a $10.00 cash refund, or a

     two month subscription extension (of roughly equal economic value.).  To date, only 105
22
     prospective Settlement Class Members have elected to exclude themselves from the
23
     settlement. Azari Aff. ¶ 31.  Pursuant to the Settlement Agreement, Defendant has also
24
     agreed to pay the cost for class notice and claims administration, which costs will not be
25
     deducted from the Class recovery.  The settlement also calls for injunctive relief
26
     concerning Defendant's business disclosures and practices, which will achieve a primary
27
     objective of the lawsuit -- the avoidance of the alleged duplicative renewal charges in the
28

358361.1                                     -15-                          08-cv-05701 EMC

1  future.  Defendant has also agreed to post on its website additional disclosures that will

2  make any customer confusion concerning duplicative charges for automatic-renewals and

3  product upgrades much less likely.  Further, Defendant's adoption of new business

4  practices is designed to achieve a primary objective of this lawsuit -- the elimination of the

5  risk of the asserted duplicative charges as a result of an email solicitation.  The fact that

6  115,808 customers elected to receive retrospective relief in the amount of $10.00 (or the

7  two-month subscription extension) per Eligible Transaction also implies that, at least that

8  same number of customers will not prospectively incur an unwanted subscription charge in

9  the full amount of approximately $50.00 per year, per product.

10      This means that, as a product of the Settlement, just those 115,808 claimants would

11  save $5,790,400 in unwanted prospective subscription charges each year (assuming that

12  they would not have otherwise opted out of automatic renewal).  The changed disclosures

13  and Defendant's adoption of new business practices reach far more of Defendant's

14  customers than that sub-set of claimants, however.  While Defendant identified

15  approximately 4.2 million customers as either having purchase transaction activity that was

16  consistent with the Settlement Class Definition or who had contacted Defendant under

17  circumstances similar to those alleged by Plaintiff, who could potentially fall into a

18  category of being a possible claimant, the benefits achieved through the disclosure and

19  adoption of new business practices inure to Defendant's entire customer base.  This scope

20  of the benefit achieved through the comprehensive injunctive and conduct relief strongly

21  weighs in favor of final approval.

22      Of course, as the Ninth Circuit has made clear, "the very essence of a settlement

23  agreement is compromise, 'a yielding of absolutes and an abandoning of highest hopes."

24  *Officers for Justice,* 688 F.2d at 624 (citation omitted).

25      "Naturally, the agreement reached normally embodies a compromised in
    exchange for the savings of cost and elimination of risk, the parties each

26      give up something they might have won had they proceeded with
    litigation…"

27

28  *Id.* (citation omitted); *see also Ellis,* 87 F.R.D. at 19 (as a *quid pro quo* for not having to

1  undergo the uncertainties and expenses of litigation, the plaintiffs must be willing to

2  moderate the measure of their demands).  "Settlement is the offspring of compromise; the

3  question we address is not whether the final product could be prettier, smarter or snazzier,

4  but whether it is fair, adequate and free from collusion." *Hanlon v. Chrysler Corp.*, 150

5  F.3d 1011, 1026 (9th Cir. 1998).  It is respectfully submitted that the final settlement is fair

6  adequate and free from collusion.

7        **4.     The Parties Have Engaged In Sufficient Investigation, Discovery and Proceedings To Identify The Strengths and Weakness of Their Cases**

8

9        "[T]he stage of the proceedings and the amount of discovery completed" is a factor

10  which the courts consider in determining the fairness, reasonableness, and adequacy of a

11  settlement.  *E.g., Warner Communications,* 618 F. Supp. at 741 (citation omitted);

12  *Weinberger, supra,* 698 F.2d at 74; *Ellis,* 87 F.R.D. at 18; *Boyd,* 485 F. Supp. at 616-17.

13        The parties engaged in extensive motion practice in this case, which included fact

14  affidavits of two of Defendant's employees.  The briefing focused on the numerous legal

15  issues presented, but also focused attention on the fact issues of the content of the

16  communications and advertizing by Defendant of its anti-virus products, directed generally

17  and to Plaintiff specifically.  Class Counsel conducted extensive confirmatory discovery in

18  this case that pertained to those issues.  Mullaney Decl. ¶¶7, 8.  Specifically, Class Counsel

19  propounded requests for information and documents on Defendant, independently

20  researched the occurrence of other similarly situated customers, and discussed with certain

21  individuals the specifics of their product experience, reviewed thousands of pages of

22  Symantec's public statements and filings, and reviewed voluminous data and documents in

23  confirmatory discovery before the final Settlement Agreement.  *Id.*  After review and

24  analysis of that information, prior to the final Settlement Agreement, Class Counsel

25  deposed Rossini Zumwalt of Defendant and inquired on those issues.

26        In short, the litigation has reached the stage where "the parties certainly have a clear

27  view of the strengths and weaknesses of their cases." *Warner Communications,* 618 F.

28  Supp. at 745; *see also Ellis,* 87 F.R.D. at 18; *Boyd,* 485 F. Supp. at 616-17.  Sufficient

1  information was available to and analyzed by the parties and their counsel to permit them

2  to carefully consider the adequacy of the Settlement in the context of their respective

3  cases.  Mullaney Decl. ¶9; George Decl. ¶¶ 8, 9.

### 5. The Recommendations of Experienced Counsel Heavily Favor Approval of The Settlement

Experienced Class Counsel, negotiating at arm's length, have weighed the above-factors and endorse the Settlement Agreement. As courts have stated, the view of the attorneys actively conducting the litigation, while not conclusive, "is entitled to significant weight." *See Ko*, 2012 WL 3945541, at *4 (*citing Hanlon*, 150 F.3d at 1026); *Ellis,* 87 F.R.D. at 18 ("the fact that experienced counsel involved in the case approved the Settlement after hard-fought negotiations is entitled to considerable weight"); *see also Fisher Bros. v. Cambridge-Lee Indus., Inc.,* 630 F. Supp. 482, 488 (E.D. Pa. 1985).  In approving a settlement, courts often focus on the "negotiating process by which the Settlement was reached." *Weinberger,* 698 F.2d at 74.

This action has been litigated by experienced and competent counsel on both sides of the case.  The three law firms representing Plaintiff are well-known for their experience in commercial and class action litigation.  Mullaney Decl. ¶6; George Decl. ¶7. Defendants are represented by one of the most prestigious law firms in the United States, Weil, Gotshal & Manges, who are held in especially high esteem for their expertise in complex commercial litigation.  The Settlement was achieved through extensive settlement negotiations, sometimes hard-fought, and all of which were concluded entirely before the issue of fees for Class Counsel was broached.  *Id.*

### 6. Reaction Of The Class Supports Approval of The Settlement

The near unanimous approval of this Settlement is entitled to nearly dispositive weight in the Court evaluation of proposed settlements. *See Ko*, 2012 WL 3945541, at *5; *In re Art Materials Antitrust Litig.,* 100 F.R.D. 367, 372 (N.D.Ohio 1983).  The following statistics show that there was an overwhelmingly positive reaction from the Class.  As of February 1, 2013:

1  • 115,808 Class members timely submitted claims (Azari Decl., ¶ 32);

2  • 3,191 Class members called the Settlement hotline concerning questions they had

3  about the Settlement Agreement and sought further information about it (Azari

4  Decl. ¶ 29);

5  • There were only 105 timely requests for exclusion, representing merely 0.0025%

6  (105÷4,224,719=0.0025%) of those Class members reached directly by email and

7  direct mail alone) (Azari Decl., ¶¶ 13, 17, 31); and

8  • There were only 13 timely objections, representing merely 0.0003%

9  (13÷4,224,719=0.0003%) of those Class members reached directly by email and

10  direct mail alone. (Azari Decl., ¶ 13, 17, 31).

11  These statistics indicate that the Settlement was widely known and appreciated by

12  the Class and that any Class members who had bona fide objections had ample opportunity

13  and means to make them[4]. Here, in addition to the injunctive relief of both the adoption of

14  new business practices and a change in disclosure affecting millions of consumers and

15  providing significant economic benefit, 115,808 Class members will receive a

16  retrospective monetary benefit.  Thus, if approved, the Settlement will result in a real and

17  substantial benefit to the Class. The overwhelming approval by Class members is an

18  important factor in evaluating the fairness, reasonableness, and adequacy of the Settlement

19  and supports approval of the Settlement.  *See Rodriguez*, 563 F.3d at 967; *see also Chavez*

20  *v. Netflix, Inc.*, 162 Cal.App.4[th] 43, 53, 75 Cal.Rptr.3d 413 (Court of Appeal, First District,

21  2008).

22  **7.   Compliance with the Class Action Fairness Act**

23  As required by the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715, on June

24  21, 2012, notice of the proposed settlement was timely sent to the United States Attorney

25  General, the Federal Trade Commission, and the Attorneys General of the fifty states and

26  _____

27  [4]   The parties assert that none of the objections filed to date has any merit.  As the Court contemplated, and in light of the February 23, 2013 deadline for the filing of objections, the parties propose to address each objection individually in post-deadline briefing.

28

1    the District of Columbia (the "Appropriate Governmental Officials"). Banks Decl. ¶¶ 2-

2    3. The notice of proposed settlement attached the documents required under CAFA,

3    including *inter alia*, the operative Second Amended Complaint, a copy of the proposed

4    Settlement Agreement and notice plan, copies of the Court's orders on Defendant's

5    motions to dismiss, and notification of the scheduled preliminary approval hearing. *See*

6    *id.*; *see also* 28 U.S.C. § 1715(b). Defendant also timely sent supplemental notices

7    advising the Appropriate Governmental Officials of rescheduling of Court hearings,

8    relevant Court orders and the Parties' responses thereto, amendments to the Settlement

9    Agreement and Notice Plan, and the Court's order granting preliminary approval. *See*

10   Banks Decl. ¶¶ 4-8.

11

12   Dated: February 5, 2013                LAW OFFICES OF THOMAS M. MULLANEY
                                            Thomas M. Mullaney
13
                                            LARRY D. DRURY, LTD.
14                                          Larry D. Drury

15                                          BROWNE GEORGE ROSS LLP
                                            Eric M. George
16

17                                          By     /s/ Eric M. George
                                                   Eric M. George
18
                                            Attorneys for Diane Marolda, Individually
19                                          and on Behalf of All Others Similarly Situated

20

21   Dated: February 5, 2013                WEIL, GOTSHAL & MANGES LLP
                                            By     /s/ Bruce A. Colbath
22                                                 Bruce A. Colbath

23                                          Attorneys on behalf of Symantec Corporation

24

25

26

27

28

NOTICE OF MOTION AND JOINT MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT