LAW OFFICES OF
  THOMAS M. MULLANEY
Thomas M. Mullaney
  (admitted *pro hac vice*)
mulllaw@msn.com
275 Madison Avenue, Suite 3700
New York, New York 10016
Tel 212.223.0800 - Fax 212.661.9860

BROWNE GEORGE ROSS LLP
Eric M. George (SBN 166403)
  egeorge@bgrfirm.com
2121 Avenue of the Stars, Suite 2400
Los Angeles, California 90067
Tel (310) 274-7100 - Fax (310) 275-5697

LARRY D. DRURY, LTD.
Larry D. Drury
  ldrurylaw@aol.com
100 North LaSalle Street, Suite 1010
Chicago, Illinois 60602
Tel 312.346.7950 – Fax 312.346.5777

Attorneys for Plaintiff Diane Marolda,
Individually and On Behalf of All Others
Similarly Situated

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| DIANE MAROLDA, Individually and on behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>SYMANTEC CORPORATION,<br><br>Defendant. | Case No. 08-cv-05701 EMC<br>The Hon. Edward M. Chen<br><br>**[PROPOSED] ORDER<br>(1) GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT;<br>(2) ADDRESSING OBJECTIONS;<br>(3) APPROVING SERVICE PAYMENTS TO CLASS REPRESENTATIVES; AND<br>(4) AWARDING ATTORNEYS' FEES AND COSTS**<br><br>Judge: Hon. Edward M. Chen<br>Date: April 4, 2013<br>Time: 1:30 p.m.<br>Crtrm.: 5, 17th Floor<br><br>Trial Date: None Set |

On April 4, 2013, the Court conducted a hearing with respect to the following motions: (1) motion for final approval of class action settlement; and (2) motion of class counsel for an award of attorneys' fees and costs. The Court has considered the documents filed in connection with these motions as well as the oral argument presented at the hearing. The Court finds and concludes as follows:

## I. FINAL APPROVAL OF CLASS ACTION SETTLEMENT

This action concerns certain of Defendant Symantec Corporation's computer antivirus and other products (Norton AntiVirus, Norton Internet Security, Norton 360, Norton Personal Firewall and Norton SystemWorks) (the "Products") and the automatic renewal and upgrade programs offered in connection those products. If enrolled, Defendant's automatic renewal program is designed to automatically renew consumers' subscriptions to the Products when those subscriptions are set to expire. In addition to this automatic renewal program, Plaintiff contends that Defendant implemented a program whereby existing subscribers to the Products were offered an opportunity to upgrade their then-existing subscriptions to one of the Products that included features different from or additional to those in the Product to which they had previously subscribed. Plaintiff contends that with respect to customers who chose to purchase an upgraded subscription pursuant to the upgrade program, the automatic renewal feature of their existing subscriptions was not automatically terminated. Rather, Plaintiff alleges that, unless a customer took additional action to cancel the automatic renewal of his or her existing product when s/he was notified of the upcoming renewal (or otherwise) that customer was charged both the automatic renewal fee and the subscription price for the upgraded product.

Plaintiff alleges that Defendant's upgrade offers failed to disclose and concealed the fact that customers needed to take additional action to prevent the automatic renewal of their or her existing subscriptions even after upgrading those subscriptions pursuant to an upgrade offer. Plaintiff also alleges that Defendant's statements in the upgrade offers

implicitly obligated Defendant terminate the customers' existing automatically renewing subscription when a customer purchased an upgrade. Thus, according to Plaintiff, it was improper for Defendant to charge customers to automatically renew their previous subscriptions after those customers paid to purchase upgrades to those subscriptions.

Defendant has asserted that the nature and terms of its automatic renewal program were completely disclosed to its customers in numerous transactional communications. For example, Defendant claims that it disclosed the terms of its automatic renewal program on the "Shopping Cart" page displayed to Plaintiff at the time of her original purchase and enrollment in the automatic renewal program. Defendant claims that the terms were also disclosed in the "Order Summary," which explained that Plaintiff was enrolled in the automatic renewal program and advised her that she would be charged for the renewal and that she could cancel at any time. Additionally, Defendant claims that Plaintiff received a Pre-Billing Notification that contained similar disclosures, including a disclosure that Plaintiff would be charged for the renewal unless she cancelled automatic renewal, and then explained how she could cancel the renewal. According to Defendant, its disclosure regime provides valid defenses to each of Plaintiff's substantive claims.

Defendant also asserts that an express contract was formed through the various transactional documents communicated to Plaintiff during the course of her purchase transactions, which defeats the "implied contract" claim Plaintiff alleges and all other claims that are derivative of that claim.

Plaintiff Diane Marolda filed her complaint in this Court on December 19, 2008. In that initial complaint, Plaintiff asserted claims for violations of California Business and Professions Code § 17200 et seq. ("UCL") and Civil Code § 1750 et seq. (Consumers Legal Remedies Act or "CLRA"). Defendant moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

Plaintiff filed a First Amended Complaint on April 20, 2009 to assert additional claims for violations of Cal. Bus. & Prof. Code § 17500 et seq., breach of express and/or

implied contract, breach of covenant of good faith and fair dealing, money had and received, unjust enrichment and declaratory relief.

Defendant moved to dismiss the First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). After briefing and oral argument, the Court dismissed certain of Plaintiff's claims, but sustained Plaintiff's claim under the "unfair" prong of the UCL based upon Plaintiff's assertions that Defendant's conduct systematically breached its implied contracts with customers. That order also sustained Plaintiff's breach of implied contract, breach of covenant of good faith and fair dealing, money had and received, unjust enrichment and declaratory relief claims.

On September 25, 2009, Plaintiff filed a Second Amended Complaint, which asserted claims for unlawful, unfair and fraudulent conduct pursuant to Cal. Bus. & Prof. Code § 17200 et seq., breach of implied contract, money had and received, unjust enrichment and declaratory relief. Defendant again moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). In an order dated March 12, 2010, the Court sustained Plaintiff's claim under the unfairness prong of the UCL, as well as Plaintiff's breach of implied contract, money had and received, unjust enrichment and declaratory relief claims.

Defendant answered the Second Amended Complaint on March 26, 2010. In its answer, Defendant denied Plaintiff's material allegations and asserted affirmative defenses to Plaintiff's claims. The parties thereafter began exploring a possible settlement of the matter, and reached a settlement in principle with the execution of a Memorandum of Understanding on November 2, 2011.

Under the terms of the Settlement, a settlement class is to be certified consisting of all Persons throughout the United States from October 1, 2005 through May 23, 2012 who entered into an Eligible Transaction by 1) purchasing a subscription to an Eligible Product and enrolling in Symantec's automatic renewal service for that product subscription and, 2) purchasing (or renewing), either during the term of that subscription or within 60 days after an automatic renewal of that Eligible Product was charged to them by Symantec or its agent(s), a second Eligible Product which was installed on the same computer, and were

charged for both the automatic renewal of the initial software product subscription and the second Eligible Product subscription, and did not receive a refund for the automatic renewal charge(s) for the initial Eligible Product purchased. Excluded from the Settlement Class are: the Defendant, its predecessors, successors, and its current and former directors, officers, employees, agents, attorneys, representatives, affiliates, associates, consultants, advisers, parents and subsidiaries; and Persons who have purchased the product for resale, and any Person who has validly elected to exclude themselves from the Settlement Class.

The Settlement provides injunctive and equitable relief as well as monetary (or, at Class members' option, subscription extensions).

The injunctive and equitable relief under the Settlement requires Defendant to add an additional disclosure on its website (www.Norton.com) concerning its automatic-renewal feature. Specifically, Defendant must make the following conspicuous disclosure on the "Upgrades and Renewals" page of its web site, which is a page subscribers visit to upgrade an existing Eligible Product to a higher level product, whether in response to an alleged email solicitation or not:

> IMPORTANT: Purchases of Norton subscription products from the Norton online store include enrollment in the Norton Automatic Renewal Service, unless you choose to cancel the service. If you are replacing an existing Norton product subscription, please make sure the existing subscription is NOT enrolled in the Norton Automatic Renewal Service. If you remain enrolled, your existing Norton product subscription will automatically renew prior to expiration. We will send you an email notification shortly before you are billed for the automatic renewal.
>
> You can confirm your Norton Automatic Renewal Service status by logging in to your Norton Account at www.myNortonAccount.com and clicking the Automatic Renewal link at the top of the page. To turn off Automatic Renewal, uncheck the box next to the corresponding Norton product subscription and click the "update" button. If you do not find the Automatic Renewal link at the top of the page in your Norton Account (to the immediate right of the "Profile" link), then your existing product subscription is not enrolled in the Norton Automatic Renewal Service.

That disclosure must be maintained on Defendant's website (www.norton.com) for so long as it is not inconsistent with Defendant's planned business practices. To the extent

that Defendant intends to modify its business practices so that the practices, if implemented, would be inconsistent with this disclosure, counsel for the Parties are to meet and confer in an attempt to modify the disclosure to be consistent with Defendant's modified practices.

The Settlement also requires Defendant to implement a new business practice with respect to upgrades and automatic renewals. Specifically, in the event Defendant in the future solicits customers by email or other personal communication to upgrade an existing subscription to one of Defendant's products, when any customer purchases an upgrade pursuant to the solicitation, Defendant will cancel any automatic renewal program applicable to the original subscription and instead enroll the customer in the automatic renewal program for the upgraded subscription purchased pursuant to the solicitation.[1]

The Settlement also requires Defendant to provide the following consideration to Settlement Class Members who submit valid claims:

1. Current Subscribers to a Symantec software product who do not submit valid proofs of purchase shall have the option to elect to receive either: one (1) two-month extension to their existing software license or one (1) ten-dollar ($10.00) cash refund, regardless of the number of Eligible Transactions they may have made.

2. Current Subscribers to a Symantec software product who submit valid proofs of purchase for the Eligible Transaction(s) for which they are claiming settlement benefits shall have the option to elect, for each Eligible Transaction supported by valid proof of purchase information, either: one (1) two-month extension to their existing software license or a ten-dollar ($10.00) cash refund.

3. If any Settlement Class Member electing to receive the subscription extension does not have a current subscription to the Symantec Product designated for the

---

[1] Circumstances in which an inadvertent technical malfunction impairs this promotion, for example, if customers' automatic renewal service enrollments are not cancelled because of an inadvertent technical malfunction, shall not constitute a breach of this section. However, any automatic renewal customer affected by such malfunction shall be entitled to a refund of an automatic renewal charge for sixty (60) days upon request to Symantec.

extension(s), the Settlement class member shall receive a ten-dollar ($10.00) cash refund for each Eligible Transaction for which they are entitled to relief under the Settlement Agreement.

The Settlement requires Defendant to provide the following compensation to former subscribers of any of the Eligible Products who submit valid claims:

1. Former Subscribers to a Symantec software product who do not submit valid proofs of purchase shall receive one (1) ten-dollar ($10.00) cash refund regardless of the number of Eligible Transactions they may have made.

2. Former Subscribers to a Symantec software product who submit valid proofs of purchase for the Eligible Transaction(s) for which they are claiming settlement benefits shall receive a ten-dollar ($10.00) cash refund for each Eligible Transaction supported by valid proof of purchase information.

In exchange for this compensation and injunctive relief, the Settlement Class releases the "Released Parties" from the "Released Claims," as those terms are defined in the Settlement Agreement, including a waiver of Civil Code § 1542.

This Court entered an Order granting the parties' Joint Motion for Preliminary Approval of Settlement on September 17, 2012.

Having considered the parties' motion for final approval of the settlement and all objections to the proposed settlement, the Court finds the settlement to be "fundamentally fair, adequate and reasonable" as is required under Federal Rule of Civil Procedure 23(e) and applicable Ninth Circuit authority. *See Mego Financial Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000); *Officers for Justice v. Civil Service Commission*, 688 F.2d 615, 625 (9th Cir. 1982).

"Assessing a settlement proposal requires a district court to balance a number of factors: the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining a class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; ... and the reaction of the class

members to the proposed settlement." *Mego Financial*, 213 F.3d at 458. The district court also must satisfy itself that the settlement is not the product of collusion among the negotiating parties. *Id.*

Although Plaintiffs' pleadings survived a number of motions to dismiss, given the evolution of case law regarding claims such as those at issue here, there is no guarantee that Plaintiffs would have prevailed on summary judgment or at trial. This case is complex, trial likely would have been protracted. Defendants have offered a substantial amount of money in settlement, and the injunctive and equitable relief provided for in the Settlement conveys significant benefits to the Class, as described above.

Plaintiff's counsel, who are experienced attorneys, believe that the settlement is extremely favorable to the class. Approximately 3.9 million notices were delivered by email to class members, but only a very small percentage objected or opted out, as is discussed more fully below. The settlement was reached after lengthy, arms-length negotiations. The Court also concludes that notice of settlement to the class was adequate and satisfied all requirements of Federal Rule of Civil Procedure 23(e) and due process. Class members received direct notice by email, and additional notice was given by publication in numerous widely circulated publications as well as in numerous targeted publications. These were the best practicable means of informing class members of their rights and of the settlement's terms. *See Silber v. Mabon*, 18 F.3d 1449, 1453-54 (9th Cir. 1994) (affirming district court's conclusion that notice by direct mail and publication was best practicable notice).

The Court concludes that final certification of the settlement class is appropriate. The four prerequisites of Rule 23(a) are met: the proposed settlement class includes millions of consumers (numerosity); all class members obtained similar anti-virus products (commonality); the named class representatives entered purchased an anti-virus product from Defendant and her claims are reasonably coextensive with those of the class as a whole (typicality); and class counsel are experienced and qualified to conduct the litigation, and there is no evidence of collusion (adequacy). The class is adequately defined

and clearly ascertainable – class members are individuals who were charged to automatically renew an existing subscription to one of the designated products after accepting a solicitation to upgrade that subscription (as more specifically described above) between October 1, 2005 through May 23, 2012. Finally, common questions of law or fact predominate, as all class members would have to demonstrate that the solicitation to upgrade was either false and misleading or that accepting the solicitation modified class members' earlier subscription agreements.

Finally, the Court concludes that Plaintiffs' attorneys are experienced and able, and fairly and adequately have represented and will continue to represent the interests of the class. *See* Fed. R. Civ. P. 23(g). Accordingly, Plaintiffs' attorneys will be appointed as class counsel for purposes of certification of the settlement class.

## II. SERVICE PAYMENTS TO CLASS REPRESENTATIVES

Courts often award service payments to class representatives in compensation for shouldering significant burdens during the litigation: retaining counsel, producing documents, responding to written discovery, and conferring with counsel. See, e.g., Mego Financial, 213 F.3d at 463 (9th Cir. 2000) (approving incentive awards of $5,000 to each of two class representatives in a settlement of $1.725 million). The Court concludes that the proposed $10,000 incentive payment to plaintiff Marolda is appropriate.

## III. ATTORNEYS' FEES AND COSTS

"Under Ninth Circuit law, the district court has discretion in common fund cases to choose either the percentage-of-the-fund or the lodestar method." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (2002). The benchmark award is twenty-five percent of the recovery obtained, "with 20-30% as the usual range." Id. Although the twenty-five percent benchmark rate is a starting point for analysis, it may be inappropriate in some cases. *Id.* at 1048. "Selection of the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case." *Id.* Relevant circumstances include

the results achieved for the class, the risk to class counsel, benefits to the class other than the cash settlement fund, market rates for contingency fee retainers, and the burdens assumed by class counsel during the representation. *Id.* at 1048-50. The lodestar method may be used as a cross-check of the percentage method. *Id.* at 1050.

Class counsel request an award of $1.7 million. Defendant has agreed to pay attorneys' fees and expenses of up to $1.7 million separate and apart from administrative costs. If the Court were to consider only the cash components of the settlement (i.e., payments available to Class members who received notice of the Settlement), counsel request 4.3% or less of the available money recovery. However, the injunctive and equitable relief component of the settlement confers a significant additional benefit on the Class in that it avoids as much as $196,000,000 in future alleged damages. Considering that additional benefit, Class counsel seek a fee that is substantially less than 1% of the benefit conferred under the Settlement.

A lodestar cross-check supports an award of $1.7 million. Counsel have documented hourly fees in excess of $800,000. Thus an award of $1.7 million would require application of a multiplier approximately 2X, which is well within the acceptable range. *See, e.g., Vizcaino*, 290 F.3d at 1051 (approving multiplier of 3.65).

The Court recognizes that class counsel assumed substantial risks and burdens in representing Plaintiff in this action. The case has been vigorously contested: several motions have been briefed and heard. Class counsel have committed to render continuing services in connection with the settlement in the event changes in Defendant's business practices necessitate changes to the disclosures posted on Defendant's web site. In the Court's opinion, class counsel comported themselves in a capable and professional manner throughout the case, and they obtained an excellent result for the class. Accordingly, the Court has no hesitation in awarding attorneys' fees and costs in the amount of $1.7 million.

**IV.  ORDER**

(1) The motion for final approval of the class action settlement is GRANTED;

(2) The objections to the settlement are OVERRULED;

(3) The proposed service payments to class representatives are APPROVED; and

(4) The motion for attorneys' fees is GRANTED.

Dated: 4/5, 2013



The Honorable Edward M. Chen
United States District Court J